# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

No. 13-11358

United States Court of Appeals
Fifth Circuit

**FILED**
April 2, 2015

Lyle W. Cayce
Clerk

JERRELL P. SQUYRES,

Plaintiff - Appellant

v.

THE HEICO COMPANIES, L.L.C.; S-LINE CORPORATION, L.L.C.; ANCRA INTERNATIONAL, L.L.C.,

Defendants - Appellees

Appeal from the United States District Court
for the Northern District of Texas

Before STEWART, Chief Judge, and JONES and HIGGINSON, Circuit Judges.

STEPHEN A. HIGGINSON, Circuit Judge:

Jerrell P. Squyres sued his former employer, The Heico Companies and its subsidiaries, for violations of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.*, and the Texas Commission on Human Rights Act ("TCHRA"), Tex. Lab. Code Ann. § 21.001 *et seq.* The district court granted summary judgment in favor of the companies. We affirm.

## FACTS AND PROCEEDINGS

### I.    Squyres's Employment History

Squyres was formerly the president and sole owner of JPS Corporation, which manufactured and sold fleet transportation products under the brand

No. 13-11358

"S-Line." In 2007, Squyres began to negotiate the sale of JPS and its subsidiaries to Ancra International. The parties reached an agreement on October 22, 2008, and Heico Holding (Ancra's parent company) created S-Line Corporation to purchase JPS's assets under an Asset Purchase Agreement. Steve Frediani, President and CEO of Ancra, also became President and CEO of S-Line.

As partial consideration for selling JPS, Squyres entered into a three-year Employment Agreement with S-Line with an annual salary of $400,000. Under the Employment Agreement, Squyres would serve as S-Line's Vice President of Sales and Marketing for three years, with automatic one-year extensions thereafter unless one of the parties gave timely notice of its intention not to extend the Agreement.

In 2011, a few months before Squyres's Employment Agreement was set to expire, Squyres remarked to Mark Daugherty, a Human Resources representative at Ancra, that Squyres would like to keep working at S-Line until he was ninety. Daugherty did not convey that information to Frediani or to anyone else at the company. When management was discussing Squyres's employment, however, Daugherty did explain that he had met with Squyres and that Squyres had expressed interest in continuing to work for the company.

Frediani ultimately decided not to renew Squyres's Employment Agreement when it expired in October 2011. In an affidavit, Frediani stated that he had never intended to renew the Agreement because it was simply consideration for the sale of Squyres's business. Frediani was also unhappy with Squyres's job performance. According to Frediani, S-Line had received less value from Squyres's sales activities than it had expected, Squyres resisted reporting his hours and business activities, Squyres's business-related expenses were not consistent with company policy, and Squyres spent too much

2

work time at social and sporting events. On September 22, 2011, Frediani presented Squyres with written notice that S-Line would not renew his Employment Agreement. At that time, Squyres was seventy.

Frediani, however, also believed that "S-Line could derive some value from the contacts Squyres had in the industry if S-Line had a more favorable agreement in place." In his deposition, Frediani elaborated that he did not intend to "fire" Squyres; instead, he "tried to put something together with [Squyres]." Along with the notice that S-Line wished to terminate the Employment Agreement, Frediani also proposed that Squyres continue working for S-Line and Ancra as an "Independent Sales Representative." In this new position, Squyres would have received a reduced salary of $120,000, as well as additional incentives and commissions. Although no other S-Line employee had a written employment contract, Squyres was not given an option to continue as an at-will employee.

Squyres did not immediately accept S-Line's new proposal. Instead, he tried to clarify and negotiate its terms. S-Line submitted its "best and final proposal" to Squyres on September 28, with a request that Squyres respond to the proposal by the end of the day on September 29. Squyres, however, did not accept or reject the proposal and continued to negotiate throughout the day on September 30. Finally, on September 30, Frediani retracted the proposal. Frediani's final email to Squyres stated: "It has become clear today that Ancra is unable to provide you with an employment agreement that meets your needs. I am retracting the offer submitted earlier today, September 30." When asked at his deposition why S-Line "terminated" Squyres's employment, Frediani offered the following explanation: "Well, as I said previously, he was never terminated. We had this Employment Agreement. The Employment Agreement ended on October 22nd. We tried to reach agreement on some form

3

No. 13-11358

of employment going forward beyond the agreement. We failed to reach that agreement, and that was the status."

After his Employment Agreement ended on October 22, 2011, Squyres was no longer employed at S-Line.

## II.    Proceedings in the District Court

In July 2012, Squyres filed an employment-discrimination action against Defendants–Appellees Heico, S-Line, and Ancra ("Appellees") in the Northern District of Texas, asserting claims under the ADEA and the TCHRA.[1] Appellees moved to dismiss Squyres's complaint.[2] On September 18, 2012, in his response to Appellees' motion, Squyres raised the possibility of amending his complaint to "ple[a]d *quantum meruit* and/or fraudulent misrepresentation claims" instead. On October 31, 2012, the district court granted in part and denied in part Appellees' motion to dismiss and entered a scheduling order that set a discovery deadline of June 21, 2013. At that point, the discovery deadline was nearly eight months away.

After the district court entered the scheduling order, Squyres filed his second amended complaint, re-pleading the age-discrimination claims. Appellees filed another motion to dismiss, but this time, the district court denied Appellees' motion. Appellees answered the second amended complaint on January 8, 2013.

When Appellees filed their answer, five months still remained before the June discovery deadline. Appellees contend that they served Squyres with interrogatories, document requests, and requests for admission on February

---

[1] Squyres also alleged a state-law breach-of-contract claim, which he later withdrew.

[2] Appellees argued that only S-Line—but not Heico or Ancra—was Squyres's employer. The district court never resolved this issue. The district court ultimately granted summary judgment on Squyres's age-discrimination claims for failure to prove pretext, without deciding whether all three entities were a single, integrated enterprise that could all be treated as Squyres's employer. Neither party raises this issue on appeal.

4

20, 2013. Squyres did not respond to these requests until April 30, 2013. Squyres also did not contact Appellees' counsel about scheduling depositions until May 22, 2013.

Three days later, one of Squyres's attorneys, Yona Rozen, broke her ankle. Because of this injury, Squyres filed a motion for a continuance asking the district court to extend all pending deadlines in the case by four months. When Squyres filed this motion on June 11, the parties had not yet scheduled mediation (even though the mediation deadline was three days away), and the parties also had not agreed on a deposition schedule (even though the discovery deadline was ten days away). In his motion, Squyres admitted that the parties had agreed to delay discovery, pending resolution of the issues raised by Appellees' second motion to dismiss.

The district court denied Squyres's request for a fourth-month continuance, granting a one-month extension instead. The district court noted that "the parties' last-minute attempt" to meet the discovery deadline was "self-imposed," and that even under their agreement to postpone discovery, the parties still had six months to meet the discovery deadline when the district court denied the second motion to dismiss in December 2012.

Next, in mid-June, Appellees approached Squyres's counsel to ask whether Squyres would oppose a motion for leave to amend Appellees' answer. In a quid pro quo agreement reached over email, Squyres agreed not to oppose Appellees motion so long as Appellees would not oppose a motion for leave to amend Squyres's complaint "in the event something comes up in the course of depositions which causes [Squyres] to feel the need to amend the complaint." Appellees then filed an unopposed motion for leave to amend their answer, adding a defense under the Texas Statute of Frauds. The district court granted the motion.

5

No. 13-11358

In late July, the parties filed a joint motion to extend the scheduling order deadlines and to continue the trial, but the district court denied the motion based on the "long period of time in which the parties have had to arrange discovery." The district court emphasized that "[t]he time has come for the parties and their counsel to be held accountable for the deadlines issued by this Court nine months ago."

Appellees then filed a motion for summary judgment. Before responding to the motion, Squyres deposed four executive officers from S-Line on August 15 and 16. Squyres's response brief was originally due on August 19, but the district court granted an extension until August 26. In that order, the district court warned the parties that it would not grant additional extensions "absent exigent circumstances not arising from the parties' conduct."

Despite this warning, Squyres requested leave to amend his complaint on August 22. Squyres's counsel had deposed Frediani on August 16, and in response to this deposition, Squyres sought to add a fraud claim and drop his breach-of-contract claim. Squyres filed his motion to amend unopposed, citing the earlier quid pro quo agreement. Appellees, however, filed a response in opposition to Squyres's motion, admitting the quid pro quo agreement, but arguing that Squyres had not sought amendment in a reasonable time after their June agreement and that "the circumstances ha[d] changed since that discussion in June." The district court ultimately denied Squyres's motion.

On November 13, 2013, the district court granted summary judgment in favor of Appellees on the state and federal age-discrimination claims. This appeal timely followed. Squyres appeals from the district court's grant of summary judgment, its denials of the two continuance motions, and its denial of Squyres's motion for leave to amend.

No. 13-11358

## DISCUSSION

### I.     ADEA & TCHRA Claims

#### A. Standard of Review

This court reviews a district court's grant of summary judgment de novo, applying the same standards as the district court. *Rogers v. Bromac Title Servs., L.L.C.*, 755 F.3d 347, 350 (5th Cir. 2014). Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). This court "resolve[s] factual controversies in favor of the nonmoving party, but only where there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." *Antoine v. First Student, Inc.*, 713 F.3d 824, 830 (5th Cir. 2013) (internal quotation marks and citation omitted).

#### B. *McDonnell Douglas* Framework

The district court granted summary judgment to Appellees on Squyres's ADEA and TCHRA claims. Because Squyres relies solely on circumstantial evidence, this court evaluates both claims under the three-step, burden-shifting framework announced in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–04 (1973). *See Miller v. Raytheon Co.*, 716 F.3d 138, 144 (5th Cir. 2013); *Mission Consol. Indep. Sch. Dist. v. Garcia*, 372 S.W.3d 629, 634 (Tex. 2012). Under this framework, the employee must first establish a prima facie case of age discrimination. *Miller*, 716 F.3d at 144. If the employee meets his initial burden, the burden of production shifts to his employer to articulate a legitimate, nondiscriminatory reason for the challenged employment decision. *Id.* At this stage, the employer's burden is one of "production, not persuasion," and "involve[s] no credibility assessment." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142 (2000) (internal quotation marks and citation omitted). If the employer is able to articulate a reason, "the presumption raised

7

by the prima facie case is rebutted and drops from the case." *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 507 (1993) (quoting *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 255 & n.10 (1981)) (internal quotation marks omitted).

The third step of the *McDonnell Douglas* analysis involves a different causation inquiry under the ADEA and the TCHRA. *See Reed v. Neopost USA, Inc.*, 701 F.3d 434, 440 (5th Cir. 2012). Under the ADEA, the employee must "prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination." *Reeves*, 530 U.S. at 143 (quoting *Burdine*, 450 U.S. at 253) (internal quotation marks omitted). An employee can show pretext "either through evidence of disparate treatment or by showing that the employer's proffered explanation is false or unworthy of credence." *Moss v. BMC Software, Inc.*, 610 F.3d 917, 922 (5th Cir. 2010) (internal quotation marks and citation omitted). In the end, under the ADEA, the employee has the burden of persuasion to establish "that age was [a] 'but-for' cause of the employer's adverse decision." *Burrage v. United States*, 134 S. Ct. 881, 889 (2014) (alteration in original) (quoting *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 176 (2009)); *Reed*, 701 F.3d at 440.

Under the TCHRA, in contrast, the employee can succeed at this third step by showing "either (1) the reason stated by the employer was a pretext for discrimination, or (2) the defendant's reason, while true, was only one reason for its conduct and discrimination is another motivating factor ('mixed motive')." *Reed*, 701 F.3d at 439–40 (quoting *Michael v. City of Dallas*, 314 S.W.3d 687, 691 (Tex. App. 2010)) (internal quotation marks omitted); *see also Quantum Chem. Corp. v. Toennies*, 47 S.W.3d 473, 480 (Tex. 2001).

### i.    Legitimate, Nondiscriminatory Reason

The district court "assume[d] without deciding that Squyres . . . made out a *prima facie* case of age discrimination." We likewise make the same

assumption.[3] The burden of production then shifted to Appellees to articulate a legitimate, nondiscriminatory reason for the challenged employment decision. *Miller*, 716 F.3d at 144. Appellees made three decisions related to Squyres's employment: (1) they decided not to renew Squyres's Employment Agreement; (2) they decided to offer Squyres a new position as an Independent Sales Representative instead; and (3) they decided to withdraw that offer.

Appellees articulated legitimate, nondiscriminatory reasons for each of their employment decisions. Their reasons for the first and second decisions overlapped: Squyres's Agreement was not economically feasible, especially in light of his disappointing job performance. Appellees therefore offered him a new position that they believed better reflected his performance. Frediani also explained that they offered him a position as a contract employee because S-Line's sales personnel were paid a "flat salary" and Squyres, in contrast, had "asked for and wanted commissions." Finally, Appellees rescinded the offer for a new position because Squyres did not accept or reject the offer before the deadline that Frediani set. Appellees submitted admissible evidence supporting each of these reasons: Frediani's affidavit and deposition testimony, other employees' deposition testimony (including Squyres's), and also supporting emails and documents.[4] They therefore met their burden of production to articulate legitimate, nondiscriminatory reasons for their employment decisions. *See Reeves*, 530 U.S. at 142 (explaining that this

---

[3] In the district court, the parties debated whether Squyres suffered an adverse employment action. Squyres argued that he was fired. Appellees, however, argued that Squyres's employment contract simply was not renewed and expired on its own terms. Because we can resolve this appeal on pretext grounds, we decline to resolve whether Squyres suffered an adverse employment action.

[4] As a result, this case is distinguishable from *Patrick v. Ridge*, 394 F.3d 311 (5th Cir. 2004), which Squyres relies on in his briefs. In *Patrick*, there was "no evidence in the summary judgment record clarif[ying] or expand[ing] on" the employer's reason for terminating the plaintiff. *Id.* at 316 (recognizing that the employer "produced no specifics").

analysis "can involve no credibility determination" (quoting *St. Mary's*, 509 U.S. at 509)); *Amburgey v. Corhart Refractories Corp.*, 936 F.2d 805, 813 (5th Cir. 1991) (noting that this "rebuttal is as easily made as the prima facie case").

On appeal, Squyres challenges this conclusion for four reasons. First, Squyres argues that the district court misinterpreted Frediani's summary judgment affidavit as providing an explanation of why Frediani decided not to renew Squyres's Employment Agreement, instead of providing reasons why the company was unhappy with Squyres's job performance. The affidavit, however, provides reasons for both issues, and these reasons are not mutually exclusive.

Second, Squyres contends that Appellees are foreclosed from arguing that they had legitimate, nondiscriminatory reasons for ending his employment because Appellees also argued that they did not "terminate" Squyres's employment. Appellees, however, made these arguments in the alternative. They first argued that Squyres failed to establish the first element of the prima facie case (that is, that he suffered an adverse employment action), and, in the alternative, they argued that they had legitimate, nondiscriminatory reasons for terminating Squyres's employment. These types of alternative arguments are permissible, and this court routinely considers them. *See, e.g.*, *E.E.O.C. v. Boh Bros. Constr. Co.*, 731 F.3d 444, 462 (5th Cir. 2013) (en banc).

Next, Squyres similarly argues that Frediani testified in his deposition that he had "no reason" to terminate Squyres's employment. Again, this argument confuses Appellees' arguments on the prima facie case and their alternative arguments related to their legitimate, nondiscriminatory reasons for their employment decisions. During Frediani's deposition, counsel asked Frediani: "What was the reason that Mr. Squyres was terminated by S-Line, LLC?" Frediani responded: "Well, as I said previously, he was never

terminated." As a follow-up question, counsel asked: "I'm trying to . . . ask you whether you were about to fire him anyway . . . ." Frediani then responded that had he been about to fire Squyres, he would not have proposed the consulting agreement. Read in full, this exchange confirms that Frediani was defending his position, for purposes of the prima facie case, that Squyres was never fired. That the district court later concluded that Appellees' actions might, in fact, constitute an adverse employment action does not preclude Appellees' alternative argument that they had legitimate, nondiscriminatory reasons for taking these actions.

Finally, Squyres rejects Appellees' identification of the three related employment decisions as the challenged employment actions. Instead, Squyres argues that the district court should have evaluated Appellees' reasons for the ultimate "termination" decision. Squyres appears to argue that the district court erroneously focused on Appellees' reasons for making the independent contractor offer, instead of their reasons for not allowing Squyres to become an at-will employee without a written contract. Appellees, however, did provide a reason for that decision. As Frediani explained, he offered the independent contractor position to Squyres because he believed it was consistent with what Squyres wanted. Moreover, it is not clear how Squyres could have seamlessly made a transition from his employment under the Agreement (which was expiring) to some new form of employment (whether as an at-will employee or as an independent contractor, with or without a written contract) without first negotiating the terms of his new employment with Appellees. When the parties could not agree on the terms of a new arrangement, Appellees withdrew their offer. The court thus concludes that Appellees articulated legitimate, nondiscriminatory reasons for terminating Squyres's employment.

11

No. 13-11358

**ii.     Pretext**

This appeal therefore turns on whether there was a genuine issue of material fact on pretext. Squyres again identifies four problems with the district court's pretext analysis, but all of them miss the mark.[5] Squyres first argues that the district court erred when it rejected Squyres's argument that Appellees failed to provide him a reason for terminating his employment. But Frediani *did* provide a reason. As Frediani explained in an email to Squyres, "It has become clear today that Ancra is unable to provide you with an employment agreement that meets your needs. I am retracting the offer submitted earlier today, September 30." Moreover, even if Appellees failed to give Squyres a reason for their decision not to renew his Employment Agreement or not to offer him an at-will employment position, Squyres can point to no evidence in the record suggesting that he ever asked for these reasons or to any case law requiring an employer to voluntarily state a reason for its termination decision.[6]

Next, Squyres asserts that the district court erred by discounting Appellees' shifting and inconsistent reasons for terminating Squyres's employment. Squyres further argues that, when reviewing these

---

[5] The AARP presents two additional arguments in its amicus brief supporting Squyres. First, the AARP argues that the district court "failed to analyze" the evidence "under the separate standards to the ADEA and TCHRA." Second, the AARP argues that the Supreme Court's decision in *Burrage v. United States*, 134 S. Ct. 881 (2014), lightened Squyres's burden of raising a genuine issue of fact by requiring him to prove only that his age was "a" but-for cause of Appellees' actions, as opposed to "the" but-for cause. Because Squyres failed to raise these arguments in his opening brief, we will not consider these arguments. *See Christopher M. ex rel. Laveta McA. v. Corpus Christi Indep. Sch. Dist.*, 933 F.2d 1285, 1293 (5th Cir. 1991) ("Absent exceptional circumstances, an issue waived by appellant cannot be raised by amicus curiae.").

[6] The cases that Squyres does cite do not support his argument. *See Mock v. Bell Helicopter Textron, Inc.*, 196 F. App'x 773, 774 (11th Cir. 2006) (per curiam); *Gee v. Principi*, 289 F.3d 342, 348 (5th Cir. 2002). Unlike the plaintiffs in both of these cases, Squyres does not contend that he ever asked Frediani why the company chose not to renew his Employment Agreement.

12

inconsistencies, the district court improperly drew inferences in favor of Appellees. Generally, "an employer's inconsistent explanations for its employment decisions at different times permits a jury to infer that the employer's proffered reasons are pretextual." *Burrell v. Dr. Pepper/Seven Up Bottling Grp., Inc.*, 482 F.3d 408, 412 n.11 (5th Cir. 2007) (citing *Gee*, 289 F.3d at 347–48). And although the court must resolve factual controversies in favor of Squyres, that obligation only applies when "there is an actual controversy." *Antoine*, 713 F.3d at 830 (internal quotation marks and citation omitted).

Here, when the alleged inconsistent statements are considered in their full context, the inconsistencies disappear. For example, Squyres highlights an apparent inconsistency in Frediani's reasons for terminating Squyres's employment, pointing both to Frediani's unhappiness with Squyres's performance and Squyres's failure to accept or reject the independent contractor proposal by the deadline. These reasons are not inconsistent because they explain different decisions: Frediani articulated one reason for not renewing the Agreement (unhappiness) and another for rescinding the independent contractor proposal (tardiness in replying).

As the district court recognized, the only possible inconsistency is between Frediani's deposition testimony and his affidavit. Frediani stated in his affidavit that he "was unhappy with Squyres's job performance," but later testified in his deposition that he was not "disappointed at something [Squyres] was doing." Again, however, this alleged inconsistency disappears when considering the statements in their full context and considering exactly which employment decision Frediani was explaining. Frediani spoke of his "unhappiness" with Squyres's job performance when explaining why the company decided not to renew Squyres's Employment Agreement. Frediani's statement that he was not disappointed with Squyres arose in a different context. Then, Frediani was explaining why he did not fire Squyres when the

No. 13-11358

Agreement expired and instead offered him a different position—a decision related to, but different from, his decision not to renew the Agreement. This deposition testimony is consistent with Frediani's statement in his affidavit that he offered Squyres the independent contractor position because Frediani "believed S-Line could derive some value from the contacts Squyres had in the industry if S-Line had a more favorable agreement in place." Because Frediani provided these reasons to explain two different actions, these statements are not inconsistent and therefore do not raise a genuine issue of fact on pretext.

Squyres next argues that the district court erred in rejecting his argument that because all other Ancra and S-Line employees were at-will employees without written employment contracts, his employment should not have ended when his Employment Agreement expired. In other words, Squyres believes that he should have automatically been allowed to continue working for Appellees without a written employment contract. Squyres's unique employment situation, however, makes this argument unpersuasive. Because of his Employment Agreement, Squyres was unlike other S-Line and Ancra employees to begin with: no other employee had a written employment contract. Squyres was initially hired and paid a high salary to compensate him for the sale of his business to S-Line. The Agreement did not guarantee renewal, and it did not guarantee any form of employment beyond the initial three-year term. Appellees therefore were not obligated to maintain Squyres's employment after the Agreement expired, and Squyres had no right to continue in his Vice President position. In short, because Squyres's employment began unlike any other employees', it is not evidence of pretext that it ended differently as well.

Squyres also does not explain what the terms of his employment would or should have been had Appellees simply allowed him to continue working after his Agreement expired. It is unclear how much he would have been paid,

what his responsibilities would have been, and whether he would have received commissions. Squyres and Appellees were not able to agree on these key employment terms, regardless of Squyres's job title or whether an agreement was put in writing. As Frediani wrote to Squyres, it became clear "that Ancra [was] unable to provide [Squyres] with an employment agreement that [met] [Squyres's needs]." Because Squyres does not dispute that he could not reach an agreement with Appellees, even after several days of negotiations, this argument fails to raise a genuine issue of fact over pretext.

As final evidence of pretext, Squyres points to two sets of stray remarks: one remark that Squyres himself made, and another set of remarks that colleagues made. First, because of its close temporal proximity to Frediani's employment decision, Squyres contends that his comment to Daugherty in Human Resources that he planned to work until ninety is evidence of pretext. But it is unclear how Squyres's own statement could serve as evidence that his employer discriminated against him because of his age. Squyres's comment, at most, demonstrated that Daugherty knew how old Squyres was. It does not demonstrate that Daugherty harbored age-based animus against Squyres. Moreover, Daugherty did not make the decisions related to Squyres's employment, and there is no evidence that Daugherty communicated this comment to Frediani (the ultimate decisionmaker) or any other S-Line employees. It is true that Daugherty was at a meeting with Frediani where they discussed Squyres's employment. But Daugherty testified that he did not convey Squyres's comment about his age; instead, he only told Frediani that Squyres had "expressed an interest in continuing to work with us." With no evidence that Daugherty ever conveyed Squyres's age-based statement to any other employee, it is not evidence of pretext.

Next, Squyres also argues that the district court erred in discounting his coworkers' "old guy" comments as evidence of pretext. According to Squyres,

No. 13-11358

Paul Delaney used to call Squyres "old guy." Similarly, Ralph Abato would occasionally call Squyres an "old man" in response to Squyres's calling Abato a "young guy[]."[7] This argument also fails. The district court properly analyzed this argument under the standard that this court articulated in *Russell v. McKinney Hosp. Venture*, 235 F.3d 219, 226 (5th Cir. 2000).[8] Under *Russell*, when an employee offers workplace comments as circumstantial evidence of age discrimination, the court applies a flexible two-part test, under which the comments must show: "(1) discriminatory animus (2) on the part of a person that is either primarily responsible for the challenged employment action or by a person with influence or leverage over the relevant decisionmaker." *Reed*, 701 F.3d at 441; *see also Laxton v. Gap Inc.*, 333 F.3d 572, 583 (5th Cir. 2003). Squyres fails to meet the first element.

A reasonable jury could not conclude that Squyres's coworkers' comments demonstrated discriminatory animus. Squyres emphasized that these comments were sporadic and that he did not find them offensive. More importantly, Squyres also testified that he knew that Delaney and Abato were "pushing for [Squyres] to stay with the company," undercutting his argument that the two men discriminated against him. Indeed, as another employee testified, both men vouched for Squyres, explaining that they believed Squyres

---

[7] Paul Delaney was the Director of Consumer Products at Ancra, and Ralph Abato was the Vice President of Sales and Marketing at Ancra.

[8] Although it has cited *Russell*, the Texas Supreme Court has not expressly adopted the two-part *Russell* test. *See Reed*, 701 F.3d at 442 n.6. Citing Fifth Circuit law, it has held that "[s]tray remarks, remote in time from [the employee's] termination, and not made by anyone directly connected with the [employment] decisions, are not enough to raise a fact question about whether [the employer's] reason for terminating [the employee] was pretextual." *M.D. Anderson Hosp. & Tumor Inst. v. Willrich*, 28 S.W.3d 22, 25 (Tex. 2000) (per curiam) (citing *Nichols v. Loral Vought Sys. Corp.*, 81 F.3d 38, 41–42 (5th Cir. 1996); *Waggoner v. City of Garland, Tex.*, 987 F.2d 1160, 1166 (5th Cir. 1993)). Because Texas courts have consistently looked to federal case law in interpreting the TCHRA, this court has applied the *Russell* standard when analyzing TCHRA claims. *See Reed*, 701 F.3d at 441–42 & n.6.

added value to the company. Given the full context of these comments, they do not suggest age-based animus. *Compare Reed*, 701 F.3d at 441–42 (holding that stray remarks were not evidence of age animus in part because they were "sporadic"), *and Sandstad v. CB Richard Ellis, Inc.*, 309 F.3d 893, 900 (5th Cir. 2002) (holding that a similar "old guy" comment, made in response to a "young guy" comment, was not evidence of discriminatory animus), *with Russell*, 235 F.3d at 226 (holding that an "old bitch" comment was evidence of discriminatory animus when it was made so frequently that the plaintiff had to wear earplugs and when the comments continued even after the plaintiff confronted the employee about what he was saying).

In conclusion, because Squyres has failed to meet his burden of raising a genuine issue of fact on pretext, the district court did not err in granting summary judgment in favor of Appellees.

## II.    Discovery Motions

### A. Standard of Review

This court applies the same standard of review when analyzing all three case-management orders that Squyres challenges on appeal: the district court's denial of two continuance motions and its denial of Squyres's motion for leave to amend his complaint. This court reviews all three orders for abuse of discretion. *See Leal*, 731 F.3d at 417 (motion to amend); *HC Gun & Knife Shows, Inc. v. City of Houston*, 201 F.3d 544, 549–50 (5th Cir. 2000) (motion for continuance). Under Federal Rule of Civil Procedure 16(b)(4), "[a] [scheduling order] may be modified only for good cause and with the judge's consent." To show good cause, the party seeking to modify the scheduling order has the burden of showing "that the deadlines cannot reasonably be met despite the diligence of the party needing the extension." *Filgueira v. US Bank Nat'l Ass'n*, 734 F.3d 420, 422 (5th Cir. 2013) (per curiam) (internal quotation marks and citation omitted). There are four relevant factors to consider when

determining whether there is good cause under Rule 16(b)(4): "(1) the explanation for the failure to timely [comply with the scheduling order]; (2) the importance of the [modification]; (3) potential prejudice in allowing the [modification]; and (4) the availability of a continuance to cure such prejudice." *Meaux Surface Protection, Inc. v. Fogleman*, 607 F.3d 161, 167 (5th Cir. 2010) (internal quotation marks and citation omitted).

Rule 16(b) also governs Squyres's motion for leave to amend. Although, Rule 15(a) of the Federal Rules of Civil Procedure ordinarily governs the amendment of pleadings, "Rule 16(b) governs the amendment of pleadings after a scheduling order's deadline to amend has expired." *Filgueira*, 734 F.3d at 422 (internal quotation marks and citation omitted). "If a party shows good cause for missing the deadline, then the more liberal standard of Rule 15(a) will apply to the district court's denial of leave to amend." *Id.* (internal quotation marks and citation omitted).

### B. Continuance Motions

On appeal, Squyres challenges the district court's denial of two continuance motions. Squyres filed his first continuance request on June 11, 2013, merely ten days before the original discovery deadline of June 21. Because Squyres requested the continuance, it was his burden to establish good cause. *Id.* Squyres only presented two reasons to the district court to justify his request: his lawyer's ankle injury and the parties' agreement to delay discovery pending the district court's resolution of Appellees' motion to dismiss.

The district court's denial of this first continuance motion was not an abuse of discretion. In its order denying the motion, the district court did not comment on the ankle injury. It is hard to see how this was an error. By Squyres's own admission, his lawyer broke her ankle on May 25, *after* Squyres's delayed May 22 request to schedule depositions. Thus, the ankle

injury does not account for Squyres's delay in initiating deposition discovery. The only explanation, then, for the delay in conducting discovery between the October 31, 2012 scheduling order and Squyres's May 22, 2013 deposition request is the parties' "self-imposed" agreement to delay discovery. The district court reasonably rejected this reason. The district court ruled on Appellees' motion to dismiss on December 18, 2012, leaving the parties six months to finish discovery, even under their own agreed-upon plan. Squyres's continuance motion made no attempt to explain why he then waited five months to schedule depositions, and the district court was therefore well within the bounds of its discretion in denying Squyres's first continuance motion. *See Reliance Ins. Co. v. La. Land & Exploration Co.*, 110 F.3d 253, 257 (5th Cir. 1997) (finding no abuse of discretion when the plaintiff "offered no justification for its delay").

The district court also did not abuse its discretion when it denied the second continuance motion. The parties jointly filed this motion on July 29, 2013, one week after discovery had closed under the new July 21 deadline. The district court swiftly denied this motion, again reiterating that the parties' delay in conducting discovery was self-imposed. The district court also explained that the parties' other excuses—pre-paid vacations, the July 4th holiday, a July trial in another case, the lawyer's broken ankle, and a family medical issue—did not justify the relief that the parties' requested. Moreover, on appeal, Squyres does not point to any deadline that either party missed. What's more, Squyres never filed a Rule 56(d) motion in response to Appellees' motion for summary judgment, and he has not identified any discovery that he

was unable to take.[9] Hindsight therefore reinforces that the district court did not abuse its discretion in denying the second continuance motion.

### C. Motion for Leave to Amend

Finally, Squyres sought leave to amend his complaint on August 22, 2013. By that time, the December 31, 2012 deadline to amend pleadings had long since passed. Therefore, because Squyres sought to amend his pleadings after the deadline set in the scheduling order, Squyres had to satisfy Rule 16(b)'s standard and again demonstrate that he could not reasonably have met this deadline despite exercising diligence. *Filgueira*, 734 F.3d at 422. Citing both Rule 16 and Rule 15, the district court denied Squyres's motion, concluding that Squyres had failed "to show that a third amended complaint should be permitted at this stage in the litigation."

Squyres fails to show good cause for his delay. Squyres's only reason for failing to amend his complaint sooner is that he did not have the basis to allege a fraud claim until after he had deposed Frediani in mid-August 2013. Squyres, however, had informed the district court back in September 2012 that there was a possibility he would amend his complaint to include a fraudulent misrepresentation claim. Despite this knowledge, Squyres then waited almost a year to seek leave to amend his complaint. *See E.E.O.C. v. Serv. Temps Inc.*, 679 F.3d 323, 334 (5th Cir. 2012) (affirming that the district court had acted within its discretion in denying leave to amend because the plaintiff's "reasonable suspicion" of a potential claim "accent[ed] [the plaintiff's] inability to explain the delay" in asking for leave to amend). Even assuming that it was reasonable for Squyres to delay amending his complaint until after he had deposed Frediani, his delay in scheduling Frediani's deposition was self-

---

[9] Appellees' employees even agreed to, and did, sit for their depositions after the July 21 discovery deadline had passed.

imposed, as discussed above. *See Lozano v. Ocwen Fed. Bank, FSB*, 489 F.3d 636, 644 (5th Cir. 2007) (affirming the district court's denial of leave to amend under Rule 15 because the plaintiffs "had been aware of the factual underpinnings of the [new] fraud claim for some time, and . . . they had not been diligent in pursuing the claim").

In addition to failing to explain his delay (both in seeking leave to amend and in scheduling Frediani's deposition), Squyres also fails to demonstrate that the amendment would have caused no prejudice to Appellees. Because Appellees had sought no discovery related to Squyres's fraud claim, allowing amendment would have imposed additional discovery costs. Moreover, Appellees had already filed their summary judgment motion by the time Squyres sought leave to amend. Thus, not only would the district court have needed to reopen discovery, but it also would have needed to allow another round of dispositive motions. *See Parish v. Frazier*, 195 F.3d 761, 764 (5th Cir. 1999) (per curiam) (noting that this court, even under the more liberal Rule 15 standard, "more carefully scrutinize[s] a party's attempt to raise new theories of recovery by amendment when the opposing party has filed a motion for summary judgment").

Squyres's final argument is that the district court abused its discretion because it ignored his quid pro quo agreement with Appellees. This argument does not help Squyres. For one, the district court was not bound by the parties' agreement and instead had "broad discretion to preserve the integrity and purpose of the pretrial order." *S&W Enters., L.L.C. v. SouthTrust Bank of Ala., NA*, 315 F.3d 533, 535 (5th Cir. 2003) (internal quotation marks and citation omitted); *see also* Fed. R. Civ. P. 16(b)(4) (stating that a scheduling order "*may* be modified only for good cause and *with the judge's consent*" (emphasis added)). Next, it was also not an abuse of discretion for the district court to grant Appellees' motion to amend their answer, but to deny Squyres's motion

to amend his complaint. Although the deadline to amend the pleadings had also already passed when Appellees filed their motion for leave to amend, Appellees had not yet filed their summary judgment motion and discovery had not yet closed under the new July 21 deadline. Squyres, on the other hand, did not file his motion until the end of August, after discovery had closed, after Appellees had filed their motion for summary judgment, and just two days before Squyres's response to the summary judgment motion was due. It was therefore not an abuse of discretion for the district court to conclude that Squyres's motion came too late in the litigation.

In sum, the district court acted within its discretion when it denied the three motions to modify the scheduling order that Squyres challenges on appeal.

## CONCLUSION

For these reasons, we AFFIRM the district court's grant of summary judgment in favor of Appellees.

22

No. 13-11358

JONES, Circuit Judge, concurring:

I am pleased to concur in Judge Higginson's opinion, which follows the district court's approach in holding that Squyres could not raise a genuine, material fact issue that his separation from the company was motivated by age discrimination. There is an easier path to this outcome, however. There is no genuine, material disputed issue that Squyres had any right to further employment by the Appellees when his three-year consulting contract expired by its own terms. The panel opinion accurately explains that the parties' relationship here was unique. Squyres had the only employment agreement in the company because it was part of the lucrative transaction in which he sold his business to S-Line. The Agreement guaranteed neither renewal nor extension of any kind after its three-year term of employment. Consequently, as Judge Higginson's opinion notes, Appellees were not obliged to retain Squyres on the payroll, and he had no right to continue in his position. When the employment agreement terminated, Squyres did not suffer a material adverse employment action, *i.e.* a discharge. *Berquist v. Washington Mut. Bank*, 500 F.3d 344, 349 (5th Cir. 2007). Because of this deficiency, Squyres could not assert a prima facie case of discrimination.

That the Appellees here chose to negotiate with Squyres over potentially different, or lesser, employment following the end of the employment agreement gives Squyres no additional legal rights. We are cited to no decision holding that Title VII or the TCHRA may become a device to extend a bona fide employment contract beyond its fixed term. This is not a case of alleged failure to hire (or rehire) for discriminatory reasons; Squyres makes no claim that the company intended to hire someone else for his special position. This case also raises no inference of a pattern of selective, arguably discriminatory application of employment contracts. In sum, the interests of judicial efficiency and minimizing litigation costs would have been best served by a trial court

23

ruling that the expiration of Squyres's employment agreement eliminated his antidiscrimination claims. I do not understand Judge Higginson's opinion to reject my conclusion, but only to rule on the factually more complex basis that Squyres failed to show pretext in the Appellees' reasons why they did not reach a deal with him for further employment.