# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 15-20082

United States Court of Appeals
Fifth Circuit

**FILED**
September 28, 2015

Lyle W. Cayce
Clerk

ANGELA VANN,

Plaintiff – Appellant,

v.

MATTRESS FIRM, INCORPORATED,

Defendant – Appellee.

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:12-CV-3566

Before ELROD and HAYNES, Circuit Judges.[*]

PER CURIAM:[**]

Angela Vann appeals the district court's grant of summary judgment on her age, race, and gender discrimination claims under Title VII of the Civil Rights Act of 1991, Chapter 21 of the Texas Labor Code (formerly known as the Texas Commission on Human Rights Act) and the Age Discrimination in Employment Act. Because Vann has failed to raise a genuine issue of material

---

[*] This matter is being decided by a quorum. 28 U.S.C. 46(d).
[**] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 15-20082

fact showing that the reasons Mattress Firm offers to explain her transfers and subsequent termination are mere pretext, we AFFIRM.

## I.

Angela Vann joined Mattress Firm as a manager-on-duty, which is an entry level sales position, in July 2005. She was 47 years old when she was hired. Over the next eighteen months, she was promoted to store manager at her small store, then transferred to become store manager at a large, high volume store located in Hedwig Village. At Hedwig Village, she continued to record strong sales numbers but, according to Mattress Firm, her co-workers had difficulty working with her. They claimed she would often assist customers out of turn and take business from other associates in the store. Vann's district manager demoted her to assistant store manager in September 2008 and moved her two months later, once again as store manager, to a new store with lower sales volume. Once again she had consistently strong personal sales but the overall store numbers of her location declined, and her associates complained of problems with her teamwork. She was transferred, promoted, and demoted a number of times until, at her request, she returned to the Hedwig Village store as store manager in March 2010.

Although Vann's personal sales numbers remained exceptional, her new district manager received more reports of problems with Vann's management and teamwork. Specifically, the reports alleged that Vann did not participate in the training of new associates, did not assist in maintaining the appearance of the store, and repeatedly took customers out of turn when they entered the store instead of following Mattress Firm's rules regarding the division of customers among employees. In October 2010, the district manager demoted Vann to assistant store manager. When complaints continued, the district manager moved Vann to the Fry Road location as assistant store manager. Vann was replaced by a white, twenty-four year old woman at the Hedwig

2

Village location. Mattress Firm asserts that the Fry Road location is comparable to the Hedwig Village location (it is classified as a large store with a clearance center) but the store was not performing as well as the Hedwig location at the time of Vann's transfer, and her sales volume fell 18% at the new location.

In November 2011, a new district manager took over Vann's store. After warning Vann and the store manager at Fry Road that they would be transferred if their sales numbers did not improve, he moved both to smaller stores. Vann was relocated to a medium store in Dairy Ashford as store manager. Mattress Firm asserts that the Dairy Ashford store was outperforming the Fry Road store at the time of the transfer, however, Vann's sales at Dairy Ashford were 40% lower than at Fry Road and 50% lower than they had been at Hedwig Village. Vann and her manager were replaced at Fry Road with two men (one white and one Hispanic), both under 40 years in age.

On December 12, 2011, Vann was terminated pursuant to a customer complaint about a transaction that had taken place on September 4, 2011, at the Fry Road store. The customer complained that Vann altered her charge after she had left the store to add an additional $79 delivery fee. The customer discovered the fee when she went to a different location to attempt to pay her remaining balance in early December 2011. Vann does not dispute that she added the fee but asserts that the customer had verbally agreed to the fee and that Vann had mistakenly left it off the customer's bill. She defended her addition of the charge as a correction rather than a surprise fee. When the district manager learned of the incident, he spoke with Vann, who admitted to altering the charge. He then fired Vann, without speaking to the other associates who Vann claimed would corroborate her assertions that the customer had verbally agreed to the delivery charge. Vann was replaced at the Dairy Ashford store by a white woman under the age of forty.

No. 15-20082

Vann filed a complaint with the Equal Employment Opportunity Commission shortly after her termination. When the EEOC declined to pursue her case, she filed this lawsuit against Mattress Firm.[1] The district court granted summary judgment in favor of Mattress Firm. *Vann v. Mattress Firm, Inc.*, No. 4:21-cv-3566, 2014 WL 4677459 (S.D. Tx. Sept. 18, 2014). Vann appeals.

## II.

We review a district court's grant of summary judgment *de novo. Jones v. Robinson Prop. Grp., L.P.*, 427 F.3d 987, 991–92 (5th Cir. 2005). Summary judgment is proper when there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). This court must take all the facts and evidence in the light most favorable to the non-moving party. *Jackson v. Watkins*, 619 F.3d 463 (5th Cir. 2010). A panel may "affirm summary judgment on any ground supported by the record, even if it is different from that relied on by the district court." *Moss v. BMC Software, Inc.*, 610 F.3d 917, 928 (5th Cir. 2010) (quoting *Hortzclaw v. DSC Comm'n Corp.*, 255 F.3d 254, 258 (5th Cir. 2001)).

## A.

Vann brings age, sex, and race based discrimination claims against Mattress Firm pursuant to three statutes: Title VII of the Civil Rights Act of 1991, 42 U.S.C. § 2000e et seq., the federal Age Discrimination in Employment Act, 29 U.S.C. § 623 et seq., and Chapter 21 of the Texas Labor Code, Tex. Lab. Code Ann. § 21. These statutes make it illegal to discriminate against an employee or potential employee on the basis of race or sex, Tex. Code Ann. §

---

[1] Vann initially also brought claims under the Fair Labor Standards Act as well as the ADEA, Title VII and Chapter 21 of the Texas Labor Code. She waived her FLSA claims prior to the district court's summary judgment ruling and does not attempt to revive them on appeal.

4

No. 15-20082

21.051, 42 U.S.C. § 2000e, or age, Tex. Code Ann. § 21.051, 29 U.S.C. § 623 (a)(1). Vann's race and sex based claims are adjudicated under the same standard.[2]

A plaintiff may establish discrimination directly or indirectly. Where, as here, the plaintiff brings only circumstantial evidence of discrimination, we rely on the three step process articulated in *McDonnell Douglas Corp. v. Green.* 411 U.S. 792 (1973). First, the plaintiff must make a *prima facie* case "showing: '(1) the plaintiff is a member of a protected group; (2) the plaintiff was qualified for the job that was held; (3) the plaintiff was discharged; and (4) after the employer discharged the plaintiff, the employer filled the position with a person who is not a member of a protected group.'" *Black v. Pan Am. Labs., L.L.C.*, 646 F.3d 254, 259 (5th Cir. 2011) (quoting *Valdez v. San Antonio Chamber of Commerce*, 974 F.2d 592, 596 (5th Cir. 1992)). Once the plaintiff has established her *prima facie* case, the burden shifts to the employer to show "a legitimate, nonretaliatory reason for the adverse employment action." *Black*, 646 F.3d at 259. "The employer's burden is one of production, not persuasion, and does not involve a credibility assessment." *Id.*

"The burden then shifts back to the plaintiff to show either: '(1) that the defendant's reason is not true, but is instead a pretext for discrimination (pretext alternative); or (2) that the defendant's reason, while true, is only one of the reasons for its conduct, and another 'motivating factor' is the plaintiff's protected characteristic (mixed motive[s] alternative)." *Id.* (quoting *Rachid v.*

---

[2] *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) (establishing the requirements to bring race based challenges under Title VII); *Goudeau v. Nat'l Oilwell Varco, L.P.*, 793 F.3d 470, 474 (5th Cir. 2015) (applying the *McDonnell Douglas* framework to TCHRA claims); *Mission Consol. Indep. Sch. Dist. v. Garcia*, 372 S.W.3d 629, 633–34 (Tex. 2012) (Chapter 21 is "effectively identical to Title VII, its federal equivalent …. Because one of the purposes of the TCHRA is to provide for the execution of the policies of Title VII of the Civil Rights Act of 1964, we have consistently held that those analogous federal statutes and the cases interpreting them guide our reading of the TCHRA.").

*Jack in the Box, Inc.*, 376 F.3d 305, 312 (5th Cir. 2004)) (alteration in original).[3] To satisfy step three under the pretext alternative, the plaintiff bears the burden of proof to show that each nondiscriminatory reason proffered by the employer is pretextual. *Black*, 646 F.3d at 259. The burden of proof remains with the plaintiff at all times, who must raise a genuine dispute of material fact that the nondiscriminatory reason is pretextual. *Tex. Dep't. of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981); *Bd. of Trustees v. Sweeney*, 439 U.S. 24 (1978); *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142–43 (2000).

**B.**

Vann initially brought claims based on a series of adverse employment actions taken against her between September 2008 and her eventual firing in December 2011. She included as adverse employment actions each of her transfers and demotions resulting in lowering earnings or longer commutes. She filed her first complaint with the Equal Employment Opportunity Commission on December 20, 2011. Her claims under both state and federal law, however, are time barred if she has not filed within 300 days of the adverse employment action. 42 U.S.C. § 2000e-5(e)(1); 29 U.S.C. § 626(d); Tex. Lab. Code § 21.202 (allowing only a 180 day window to file). Vann's transfer from the Hedwig Village store to the Fry Road store in July of 2011 and her transfer from Fry Road to the Dairy Ashford store fall within the 300 day window, as does her termination. All of her other claims based on earlier transfers are time barred.[4] She is, however, able to use these transfers "as background evidence

---

[3] Vann has not argued the mixed motives alternative, so we need not address it.

[4] Vann argues that the series of transfers she experienced over a number of years should qualify under the "continuing violation theory" which "relieves a plaintiff of establishing that all of the complained-of conduct occurred within the actionable period if the plaintiff can show a series of related acts, one or more of which falls within the limitations period." *Huckaby v. Moore*, 142 F.3d 233, 238 (5th Cir. 1998) (quoting *Messer v. Meno*, 130

in support of a timely claim." *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002).

## C.

The district court determined that Vann established a *prima facie* case on her race and sex based claims. Assuming without deciding that Vann met her summary judgment burden on the *prima facie* case, Mattress Firm has met its burden of production by producing evidence that Vann's coworkers did not consider her a good team player at the Hedwig Village and Fry Road locations and that she neglected the non-sales duties of her management position. Furthermore, Mattress Firm relies on the customer complaint and Vann's subsequent actions to defend Vann's termination. Vann asserts that these reasons are mere pretext, but has not met her burden of proof to do so, even when taking her proffered evidence in the light most favorable to her claims.

As evidence of pretext, Vann attempts to offer proof that similarly situated Mattress Firm employees who were not members of the relevant protected classes were treated favorably in comparison with her. *See McDonnell Douglas*, 411 U.S. at 804 ("[R]espondent must … be offered a fair opportunity to show that petitioner's stated reason for respondent's rejection was in fact pretext. Especially relevant to such a showing would be evidence that white employees involved in acts … of comparable seriousness … were nevertheless retained."). While Vann was consistently a top seller at her various stores, Mattress Firm has asserted that part of her success resulted from poaching the sales of other associates. Vann has not offered any comparators with a similar history of poor teamwork and facility management

---

F.3d 130, 134 (5th Cir. 1997)). The district court determined the continuing violation theory is not appropriate where, as here, each act is "the sort of discrete and salient event that should put an employee on notice that a cause of action has accrued." *Huckaby*, 142 F.3d at 240. We agree.

who were preferentially treated. In fact, most Mattress Firm employees were subject to frequent transfers—an average employee in Vann's area is transferred seven or eight times in a three year period.

As for her termination, Vann has offered evidence of other employees, not members of protected classes, who sold used goods as new, were late or absent from work, engaged in unprofessional conduct toward customers or coworkers, and shared information with competitors. These individuals were not terminated. Their activities, however, are insufficiently close to Vann's to create a genuine issue of material fact as to whether Mattress Firm's justifications are pretext. *See Turner v. Kansas City S. Ry. Co.*, 675 F.3d 887, 895 (5th Cir. 2012) ("the employment actions being compared will be deemed to have been taken under nearly identical circumstances when the employees being compared held the same job, … shared the same supervisor … and have essentially comparable violation histories.").

Vann also offers the example of salespeople reprimanded for poor teamwork and other individuals reprimanded for incorrectly under billing customers without making any effort to correct the charges. Vann has not shown, however, that district managers wanted those individuals to correct the under-billed charges without contacting the customers, nor has she shown that the reprimanded individuals had an extensive history of teamwork problems. Vann's problems continued over a number of years in a number of locations with various groups of coworkers. She has not offered any evidence of a similarly situated individual. Nor has she presented any Mattress Firm employee who added such a large charge to a customer account without speaking with the customer leading to a customer complaint. Finally, she has not produced an example of another employee who, as she did, attempted to negotiate what the customer felt was an unethical solution to a problem after that customer made a complaint. Accordingly, the district court determined

that she has not presented evidence rebutting "each of the nondiscriminatory reasons the employer articulate[d]" and therefore has failed to satisfy the *McDonnell Douglas* test. *Wallace v. Methodist Hosp. Sys.*, 271 F.3d 212, 200 (5th Cir. 2010). We agree.

## D.

Vann's age based claims are assessed under a modified version of the *McDonnell Douglas* framework. The only difference occurs in the final stage of the *McDonnell Douglas* analysis. *Goudeau*, 793 F.3d at 474. "Under the ADEA, the employee must prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination." *Squyres v. Heico Comp.*, 782 F.3d 224, 231 (5th Cir. 2015). "The ADEA thus requires a showing of 'but-for' causation." *Goudeau*, 793 F.3d at 474. Merely showing that age was a motivating factor in the decision to terminate or transfer an employee will not allow a claim to succeed. As with her race and sex based claims, the burden of persuasion remains with the plaintiff. *Squyres*, 782 F.3d at 231.

As we did with her race and sex claims, we assume without deciding that Vann has established her *prima facie* case. Mattress Firm has offered her poor teamwork and leadership as reasons for her transfers and adds her alteration of the customer bill to explain her termination. The comparators offered by Vann to show pretext relating to her age based claims are the same as those offered for her other claims. The district court found that Vann's attempt to prove Mattress Firm's explanation of her transfers and termination were pretextual did not create a genuine issue of material fact. We agree for the same reasons we discussed above.

## III.

Because Vann has not created a genuine issue of material fact suggesting that Mattress Firm's proffered reasons for her transfers and termination are

No. 15-20082

pretextual, we AFFIRM the ruling of the district court granting summary judgment.