# In the
# United States Court of Appeals
## For the Seventh Circuit

No. 02-3190

MARGARET M. LEIBFORTH,

*Plaintiff-Appellant,*

*v.*

BELVIDERE NATIONAL BANK and JAMES METZ,

*Defendants-Appellees.*

Appeal from the United States District Court
for the Northern District of Illinois, Western Division.
No. 99 C 50381—**Philip G. Reinhard**, *Judge.*

ARGUED JUNE 3, 2003—DECIDED JULY 25, 2003

Before FLAUM, *Chief Judge*, and BAUER and EVANS, *Circuit Judges.*

FLAUM, *Chief Judge.* Plaintiff Margaret Leibforth appeals the district court's grant of summary judgment for the Belvidere National Bank ("Bank") and its Chief Executive Officer, James Metz, in this suit under Title VII and the Age Discrimination Employment Act. We affirm.

## I. BACKGROUND

Leibforth began working for the Bank in 1980 as a teller/secretary and in December 1997 was promoted to the position of Branch Manager/Assistant Vice President. She

was terminated a year later, when she was 55-years old. The parties agree that Leibforth was performing her job in a satisfactory manner, but the Bank says that it decided to discharge her when it learned that she had imminent plans to retire. More specifically, the Bank claims that on May 28, 1998, Leibforth met with Metz and Senior Vice President Kim Larson to inform them that she was selling her house. Metz and Larson understood Leibforth to be saying that, as soon as her house was sold, she was going to retire and move to Tucson, Arizona. Leibforth, however, denies ever stating that she had any immediate plans to retire. Instead, according to her witness John Murphy, who claims to have been present at the May 28 meeting, Leibforth told Metz and Larson that her husband "was thinking of retiring," that they had put their home up for sale, and that she "would not be retiring until her house sold."

Metz announced Leibforth's planned retirement to Tucson during a June 1998 officers' meeting. Leibforth did not attend the meeting, but Metz's announcement was reflected in the minutes, which were sent to Leibforth among others. The following month, the Bank distributed a memorandum announcing its hiring of Scott Drexler, a 33-year-old male, as Leibforth's replacement. At the same time, Leibforth's title was changed from Branch Manager/Assistant Vice President to Assistant Branch Manager/Assistant Vice President. Leibforth claims that it was not until she read this memorandum that she became aware of the Bank's belief that she was planning to retire.

On August 25, 1998, Metz and Larson asked Leibforth to specify a date for her anticipated retirement. Metz told Leibforth that she would otherwise be terminated on December 31, 1998, because the Bank did not want to continue paying two Branch Manager salaries for an indefinite period of time. In response Leibforth sent Metz a letter stating, "[a]t this time . . . I will not be setting a retirement date but will give you one month's notice when

my home is sold of my last day of work." The Bank, however, true to its word, terminated Leibforth's employment on December 31, and two months later hired Rose Sollinger, a 40-year-old female, to serve as its new Assistant Branch Manager. Leibforth, meanwhile, ended up selling her house in May 1999, and the next month she and her husband moved to Tucson.

Leibforth then filed this suit under Title VII and the ADEA, alleging that the Bank "terminated Plaintiff's employment, and demoted and/or failed to promote the Plaintiff and/or forced the Plaintiff to retire" because of her age and sex, and engaged in a pattern and practice of age and sex discrimination by forcing females "nearing retirement age" to retire. Later in the proceedings, Leibforth raised two additional claims—that the Bank retaliated against her and that it discriminated against her by giving her less pay than her replacement, Drexler. The district court granted summary judgment for the Bank on all these claims. It found that Leibforth (1) failed to present direct evidence of discrimination; (2) failed to establish a *prima facie* case of discriminatory demotion; (3) established a *prima facie* case of discriminatory discharge but failed to show that the Bank's proffered nondiscriminatory reason was pretextual; (4) presented no admissible evidence showing a pattern or practice of discrimination; (5) failed to rebut the Bank's nondiscriminatory reason regarding unequal pay; and (6) failed to present any evidence that the Bank's actions were retaliatory. Leibforth filed a timely notice of appeal.

## II. DISCUSSION

Though Leibforth raised numerous claims below, we conclude that she has waived all but two of them—those regarding discriminatory demotion and discriminatory discharge—for lack of development in her appeal brief. *United*

*States v. Hook*, 195 F.3d 299, 310 (7th Cir. 1999). As for the two remaining claims, the Bank maintains that we can affirm the district court's grant of summary judgment on any number of grounds. For instance it argues that Leibforth's claim of discriminatory termination is barred because she failed to raise it in her administrative charge before the Equal Employment Opportunity Commission, *see Noreuil v. Peabody Coal Co.*, 96 F.3d 254, 258 (7th Cir. 1996), and that Leibforth failed to establish a *prima facie* case of discriminatory demotion because her alleged "demotion" was not a materially adverse employment action, *see generally Williams v. Bristol-Myers Squibb Co.*, 85 F.3d 270, 274 (7th Cir. 1996). We need not address these issues since we can dispose of both claims with dispatch on the ground that Leibforth failed to establish pretext. The Bank alleged that it hired Drexler (and at the same time "demoted" Leibforth) because it thought that Leibforth's retirement was imminent. Though Leibforth now asserts that she never had any intention of retiring, the relevant question for purposes of our pretext analysis is whether the Bank *honestly believed* that she did, and Leibforth presented no evidence showing that that was not the case. In fact it is undisputed that Metz told Leibforth during the May 28 meeting that he intended to hire a replacement for her position due to her plan to leave the Bank once her house sold.[1] The Bank may have been wrong in its belief that

---

[1] Though Leibforth now contests this factual point, she did not dispute it in response to the Bank's Statement of Material Facts under Local Rule 56.1(a). Nonetheless, at oral argument Leibforth maintained that the fact should not be deemed admitted because she made some sort of "general" denial of the allegations contained in the Bank's 56.1(a) Statement. We disagree with her position. The Local Rules require that a party opposing summary judgment file "a concise response to the movant's statement that shall contain . . . a response to each numbered paragraph in the

(continued...)

Leibforth was going to retire (though the evidence over-whelmingly shows that it was not),[2] but to establish pretext Leibforth had to prove that the Bank's proffered reason was a *lie*, *Peters v. Renaissance Hotel Operating Co.*, 307 F.3d 535, 545 (7th Cir. 2002), which she failed to do.

Leibforth's claim of discriminatory discharge fails for similar reasons. The Bank alleged that it terminated Leibforth's employment because it did not want to continue paying her indefinitely while she tried to sell her home. Leibforth counters that the Bank's hiring of Rose Sollinger proved this proffered reason to be pretextual, but we disagree. First of all, Leibforth's only evidence fails to establish whether Sollinger was hired into the exact same position that Leibforth had held, nor does it give any indication whether Sollinger was receiving the same pay. Further, Leibforth's argument fails to address the real point—that the Bank did not want to keep her on for an indefinite period of time, knowing that she would immediately leave upon the sale of her house.

Finally, Leibforth's claim that she has direct evidence of discrimination is frivolous. She points to a statement by the Bank that the position eventually filled by Drexler was not offered to any female applicants and to a statement from

---

[1] (...continued)
moving party's statement, including, in the case of any disagreement, specific references to the affidavits, parts of the record, and other supporting materials relied upon." Northern District of Illinois, Local Rule 56.1(b). Generalized denials do not suffice under this Rule.

[2] Leibforth in fact stated in her administrative charge that "[o]n May 28th, 1998, I met with James Metz . . . who informed me of his plans to hire someone for my position of Assistant Vice President, Branch Manager, due to my plan to leave Respondent when my house sold."

Larson that "it was in the Bank's best interest to set Leibforth's retirement date because she refused to do so." These statements do not approach being admissions that the Bank's actions were based on a prohibited animus, *Radue v. Kimberly-Clark Corp.*, 219 F.3d 612, 616 (7th Cir. 2000), and so cannot be characterized as direct evidence of discrimination.

### III. CONCLUSION

The district court's grant of summary judgment for the Bank is AFFIRMED.

A true Copy:

Teste:

_____

*Clerk of the United States Court of Appeals for the Seventh Circuit*