# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

February 13, 2012

No. 11-30664
Summary Calendar

Lyle W. Cayce
Clerk

JANET ANTHONY,

Plaintiff–Appellant

v.

PATRICK R. DONAHOE, Postmaster General,

Defendant–Appellee

Appeal from the United States District Court
for the Middle District of Louisiana
USDC No. 3:09-cv-01009-HGB-AC

Before KING, JOLLY, and GRAVES, Circuit Judges.

PER CURIAM:[*]

Plaintiff–Appellant Janet Anthony brought suit against the United States Postal Service alleging that her temporary reassignment to process mail at another Post Office facility in the wake of Hurricane Gustav constituted racial, gender, and age discrimination, and that it constituted retaliation because of prior equal employment opportunity activity. Anthony appeals the district

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 11-30664

court's denial of her motion for a continuance and its grant of summary judgment in favor of the Postal Service. We AFFIRM.

## I. FACTUAL BACKGROUND

Janet Anthony ("Anthony"), an African-American woman who was 59 years old at the time of the events at issue, was employed by the United States Postal Service ("USPS") as the Manager of Transportation Networks in the New Orleans office of USPS. In September 2006, she was transferred to USPS's Baton Rouge office, where she continued to hold the same position, but split her work between New Orleans and Baton Rouge. In June 2008, Anthony was temporarily assigned the position of Service Coordinator and reported to the Baton Rouge facility full-time. On August 16, 2008, Carol Weisiger ("Weisiger") arrived at the Baton Rouge facility and became Anthony's supervisor.

One week prior to Hurricane Gustav's landfall on September 1, 2008, USPS began to prepare for the storm by closing the New Orleans facility and re-routing mail to other USPS locations, including the USPS facility in Port Allen, Louisiana. Under USPS's emergency protocol, USPS employees from both affected and unaffected areas were temporarily reassigned from their normal work locations and duties to assist in resolving the backlog of mail. These employees were asked to perform duties outside of their regular job assignments. Because Anthony's position was considered nonessential, on September 3, 2008, Weisiger reassigned Anthony to Port Allen to assist in processing the backlog of mail that had accumulated in the aftermath of Gustav. Anthony remained in Port Allen for approximately three weeks assisting in sorting through mail. She alleges that during her time there she developed a moderate to severe case of carpal tunnel syndrome, swollen knees, and chondritis in her chest. On September 29, 2008, after her three weeks in Port Allen, Anthony went on an extended sick leave and eventually retired from USPS in January 2009.

2

No. 11-30664

On October 14, 2008, Anthony contacted an Equal Employment Opportunity ("EEO") counselor and subsequently filed a formal complaint with USPS's EEO office on December 19, 2008. The EEO issued a decision finding no discrimination on the part of USPS on June 8, 2009. On August 7, 2009, Anthony filed a complaint in the United States District Court for the Middle District of Louisiana,[1] alleging that she was subject to gender, race, and age discrimination by being asked to do mail processing in work in Port Allen unlike similarly situated, younger white male colleagues. She also alleges that her reassignment to the Port Allen facility was done in retaliation for the filing of a prior EEO complaint, as well as a letter she wrote complaining of workplace conditions to Senator Mary Landrieu. Senator Landrieu responded to Anthony's letter with a letter addressed to Daisy Comeaux, USPS's Director of Public Relations in New Orleans, asking that Anthony's concerns be carefully and thoroughly considered. Senator Landrieu's letter and its envelope both had postmarks and date stamps indicating that it was received September 9, 2008, after Anthony was reassigned.

USPS initially moved for summary judgment on September 28, 2011. The district court granted Anthony several continuances to extend trial and discovery deadlines, allowing Anthony to conduct various depositions. On November 29, 2010, the district court dismissed all motions regarding summary judgment and gave both parties time to refile the motions. Accordingly, USPS filed a second motion for summary judgment on May 5, 2011. On May 25, 2011, the district court denied Anthony a continuance and gave her until May 31, 2011, to respond to USPS's motion for summary judgment. The district court denied Anthony's subsequent June 13, 2011, motion for a continuance on June

---

[1] Anthony initially filed her complaint against John E. Potter who was serving as Postmaster General. Potter was later replaced as Postmaster General by Patrick Donahoe. For consistency, we refer to the defendant in this case as USPS.

3

No. 11-30664

22, 2011.  Shortly thereafter, on June 24, 2011, the district court granted summary judgment in favor of USPS.  Anthony now appeals the district court's denial of her June 2011 motion to continue discovery deadlines and the district court's grant of summary judgment in favor of USPS.

## II.  DISCUSSION

### A.  Summary Judgment

We review a district court's grant of summary judgment de novo.  *Kemp v. Holder*, 610 F.3d 231, 234 (5th Cir. 2010) (citing *LeMaire v. La. Dep't of Transp. & Dev.*, 480 F.3d 383, 386 (5th Cir. 2007)).  Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(a).  There is no genuine issue for trial "[i]f the record, taken as a whole, could not lead a rational trier of fact to find for the non-moving party."  *Kipps v. Caillier*, 197 F.3d 765, 768 (5th Cir. 1999).  We consider the facts and evidence presented in the light most favorable to the non-moving party, which is Anthony in this case.  *Breaux v. Halliburton Energy Servs.*, 562 F.3d 358, 364 (5th Cir. 2009).

### 1.  Race and Gender Discrimination

Anthony's first claim is that she was subject to race and gender discrimination in violation of Title VII of the Civil Rights Act of 1964 ("Title VII") when she was reassigned to perform mail sorting at the Port Allen facility, unlike similarly situated white male colleagues.  Title VII provides that "[i]t shall be an unlawful employment practice for an employer . . . to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin . . . ."  42 U.S.C. § 2000e-2(a); *see also McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 796 n.4 (1973).

No. 11-30664

As there is no direct evidence of discrimination in this case, we turn to the burden-shifting framework established by *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).  Under this framework, a plaintiff must first establish a prima facie case of discrimination by showing that: "(1) [s]he is a member of a protected class, (2) [s]he was qualified for the position at issue, (3) [s]he was the subject of an adverse employment action, and (4) [s]he was treated less favorably because of h[er] membership in that protected class than were other similarly situated employees who were not members of the protected class, under nearly identical circumstances." *Lee v. Kansas City S. Ry.*, 574 F.3d 253, 259 (5th Cir. 2009) (citing *McDonnell Douglas*, 411 U.S. at 802).  Once the plaintiff has established a prima facie case, the burden of production shifts back to the employer who must offer an alternative non-discriminatory explanation for the plaintiff's adverse employment action.  *Id.*  If the employer can produce such an explanation, then there is no inference of discrimination and the plaintiff must demonstrate that the employer's explanation is merely a pretext for discrimination.  *Id.*

The district court properly found that Anthony could not make out a prima facie case of discrimination.  "[A]n adverse employment action consists of *ultimate employment decisions* such as hiring, granting leave, discharging, promoting, and compensating." *Peagram v. Honeywell, Inc.*, 361 F.3d 272, 282 (5th Cir. 2004) (internal quotation marks and citation omitted) (emphasis in original). "[W]here the evidence produces no objective showing of a loss in compensation, duties, or benefits, but rather solely establishes that a plaintiff was transferred from a prestigious and desirable position to another position, that evidence is insufficient to establish an adverse employment action." *Id.* (citing *Serna v. City of San Antonio*, 244 F.3d 479, 485 (5th Cir. 2001)).

Anthony cannot show that she was subject to an adverse employment action.  Her reassignment to the Port Allen facility was temporary and part of

a larger emergency plan in the wake of Hurricane Gustav. During her time there, she received the identical salary and benefits she received at her prior position. Moreover, Anthony produced no evidence that she would be barred from returning to her previous position once the situation following Gustav had rectified.

Anthony also fails to show that similarly situated employees were treated more favorably than she was under nearly identical circumstances. Before the district court Anthony pointed to Gary LaBorde ("LaBorde") as a comparator. Laborde, a white male who was the New Orleans in-plant support manager and also reported to Weisiger, was not removed from his regular position during the emergency. However, Anthony was not similarly situated to LaBorde. The evidence before the district court showed that LaBorde was regarded as an essential employee and was, on the basis of his expertise, one of only five employees selected to close USPS's main facility in New Orleans and return immediately after Gustav to reopen the facility.

Anthony's failure to make out a prima facie case of discrimination terminates her Title VII race and gender discrimination claims. The district court properly granted summary judgment for USPS on these grounds.

*2. Age Discrimination*

Anthony's second claim is that she was discriminated against on the basis of her age. The Age Discrimination in Employment Act of 1976 ("ADEA") provides that "[i]t shall be unlawful an employer . . . to . . . discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age . . . ." 29 U.S.C. § 623(a)(1). "To demonstrate [a prima facie case of] age discrimination a 'plaintiff must show that (1) [s]he was discharged; (2) [s]he was qualified for the position; (3) [s]he was within the protected class at the time of discharge [i.e., at least 40 years old]; and (4) [s]he was either i) replaced by someone outside the protected class

No. 11-30664

[i.e., under the age of 40], ii) replaced by someone younger, or iii) otherwise discharged because of h[er] age.'" *Rachid v. Jack In The Box, Inc.*, 376 F.3d 305, 309 (5th Cir. 2004) (quoting *Palasota v. Haggar Clothing Co.*, 342 F.3d 569, 576 (5th Cir. 2003) (internal quotation marks and citation omitted)). "The first three elements of a prima facie case of age discrimination under the ADEA are identical to the first three elements of a Title VII prima facie case." *Meinecke v. H & R Block of Houston*, 66 F.3d 77, 83 (5th Cir. 1995) (citation omitted).

As Anthony has failed to make out an adverse employment action for Title VII purposes, this also forecloses her ADEA claims.[2] We therefore affirm the district court's grant of summary judgment for USPS on Anthony's ADEA claim.

*3. Retaliatory Discrimination Claim*

Anthony's final claim is that her temporary reassignment was in retaliation for her previous EEO complaint and her letter to Senator Mary Landrieu. "There are three elements to a prima facie case of retaliation under Title VII: (1) that the plaintiff engaged in activity protected by Title VII, (2) that an adverse employment action occurred, and (3) that a causal link existed between the protected activity and the adverse action." *Raggs v. Miss. Power & Light Co.*, 278 F.3d 463, 471 (5th Cir. 2002). The burden-shifting framework of *McDonnell Douglas* continues to apply to retaliatory discrimination claims. *Id.* at 468. Under Title VII, an employee has engaged in a protected activity if she has either (1) "opposed any practice made an unlawful employment practice" by Title VII or (2) if she "made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing" under Title VII. 42 U.S.C. § 2000e-3(a). "'The proper standard of proof . . . [for] a Title VII retaliation claim is that the adverse employment action . . . *would not have occurred 'but for' [the] protected conduct*." *Strong v. Univ. Healthcare Sys., L.L.C.*, 482 F.3d 802, 806

---

[2] There is also no evidence that Anthony's age was the but-for cause of her temporary reassignment. *See Moss v. BMC Software, Inc.*, 610 F.3d 917, 922 (5th Cir. 2010).

No. 11-30664

(5th Cir. 2007) (quoting *Septimus v. Univ. of Houston*, 399 F.3d 601, 608 (5th Cir. 2005)) (emphasis in original).

In *Burlington Northern and Santa Fe Railway Co. v. White*, 548 U.S. 53 (2006), the Supreme Court explained that an adverse employment action in the Title VII retaliation context depends on whether the act was materially adverse, meaning that it would "have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Id.* at 68 (internal quotation marks and citation omitted). "Whether a particular reassignment is materially adverse depends upon the circumstances of the particular case, and should be judged from the perspective of a reasonable person in the plaintiff's position, considering all the circumstances." *Id.* at 71 (internal quotation marks and citation omitted).

Even under this broader definition, Anthony still fails to demonstrate that her temporary reassignment was an adverse employment action. Her reassignment to sort mail at Port Allen was temporary and due to emergency circumstances. After the hurricane, many other USPS employees were similarly reassigned to locations and responsibilities different from their normal employment. She was not demoted and experienced no change to her salary or her benefits. Under all the circumstances of Anthony's case, a reasonable person would not conclude that her reassignment to Port Allen would have dissuaded a reasonable worker from making charges of discrimination. *Burlington*, 548 U.S. at 68.

Furthermore, even assuming that her temporary assignment to process mail in Port Allen was an adverse employment action, there is no evidence that Anthony's May 2008 EEO complaint and her letter to Senator Landrieu was the but-for cause in Anthony's reassigment. Anthony's May 2008 EEO complaint was filed prior to the arrival of Weisiger and based on a dispute with a different manager. Weisiger testified that she had no knowledge of the complaint and

that it did not impact her decision to reassign Anthony in the wake of the hurricane. The letter from Senator Landrieu only came to the attention of her supervisors after her reassignment. Anthony has produced no evidence showing that Weisiger knew of the letter or that it led Weisiger to assign Anthony to the Port Allen facility.

Anthony has failed to make out a prima facie case of retaliatory discrimination under Title VII. We affirm the district court's grant of summary judgment in favor of USPS on this ground.

## B. Denial of Continuances

We review a district court's denial of a motion to continue trial and discovery deadlines under an abuse-of-discretion standard. *Pustejovsky v. Pliva, Inc.* 623 F.3d 271, 278 (5th Cir. 2010). Federal Rule of Civil Procedure 56(d) provides that a district court may defer a motion for summary judgment or allow time for a nonmovant to obtain affidavits or declarations or to take discovery "[i]f a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition." FED. R. CIV. P. 56(d); *see also* FED. R. CIV. P. 56(f). A nonmovant seeking this relief must show "(1) why she needs additional discovery and (2) how that discovery will create a genuine issue of material fact." *Beattie v. Madison Cnty. Sch. Dist.*, 254 F.3d 595, 606 (5th Cir. 2001).

The district court denied Anthony's June 13, 2011, request for a continuance, observing that it had granted Anthony a previous substantially similar request for a continuance on October 7, 2010. Anthony argues that a further extension of discovery was needed to further investigate (1) the date stamp of the letter from Senator Landrieu; (2) the existence and location of a computerized log of incoming letters from Congress members; and (3) to take a look at several additional depositions.

No. 11-30664

None of this additional evidence would have assisted Anthony in creating a genuine issue of material fact.  As we discussed above, Anthony failed to allege an adverse employment action.  Accordingly, even if her contact with Senator Landrieu played a role in her temporary reassignment to the Port Allen facility, that reassignment was not an adverse action and therefore gathering evidence that Senator Landrieu's letter arrived prior to her reassignment would have been fruitless.  Moreover, USPS first moved for summary judgment on September 28, 2010, laying out the law and evidence supporting its position.  The district court gave Anthony until May 31, 2011, to conduct discovery and prepare a response to USPS's motion for summary judgment.  Anthony took depositions of other witnesses in this time period, but was unable to gather evidence sufficient in amount or kind to create a genuine issue of material fact.  With this extension and the absence of a workable argument by Anthony, we cannot say that it was an abuse of discretion for the district court to deny Anthony's motion.  We, therefore, affirm its decision to deny Anthony's motion for a continuance.

## III.  CONCLUSION

For all of the foregoing reasons, we AFFIRM the district court's judgment.

10