# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 18-40691

United States Court of Appeals
Fifth Circuit

**FILED**
December 13, 2019

Lyle W. Cayce
Clerk

PAUL A. TAGLIABUE, JR.,

      Plaintiff - Appellant

v.

ORKIN, L.L.C., doing business as Orkin Pest Control,

      Defendant - Appellee

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 6:17-CV-13

Before DAVIS, HO, and ENGELHARDT, Circuit Judges.

PER CURIAM:*

Paul Tagliabue, Jr., appeals the district court's summary judgment in favor of his former employer, Orkin, L.L.C., dismissing his age discrimination claim. Tagliabue alleges that Orkin unlawfully discriminated against him by forcing him to retire early because of his age, which he maintains is equivalent to being discharged in violation of the Age Discrimination in Employment Act, 29 U.S.C. § 621, *et seq.* On appeal, he asserts that the district court erroneously concluded that he did not establish a prima facie case of age discrimination.

---

\* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 18-40691

Tagliabue also maintains that he produced sufficient evidence to rebut Orkin's proffered justification as pretext and to overcome summary judgment. Assuming *arguendo* Tagliabue established a prima facie case, we AFFIRM because he failed to raise a genuine issue of material fact as to pretext.

**I.**

Tagliabue was employed by Orkin, L.L.C., doing business as Orkin Pest Control, as branch manager of the Victoria, Texas branch beginning in 1993 until his alleged forced retirement in 2015. Tagliabue asserts he never indicated—and never put in writing—a definite date for his retirement and intended to stay several more years to train his replacement. On January 30, 2015, however, John White, Orkin's regional manager and Tagliabue's supervisor,[1] called Tagliabue and told him he had "his stuff taken care of" and he "could leave." Tagliabue was paid through March 31, 2015, which included his requested unaccrued vacation time—an exception to Orkin's policy against such compensation. Tagliabue was age 67 at the time of the challenged employment decision.

On March 7, 2017, Tagliabue sued his former employer, Orkin, L.L.C., for age discrimination under the Age Discrimination in Employment Act (ADEA), alleging that he was unlawfully discharged, *i.e.*, forced to retire early, because of his age. Orkin moved for summary judgment asserting that because Tagliabue voluntarily retired, he was not subject to an adverse employment action and failed to establish a prima facie case of age discrimination. Alternatively, Orkin argued that Tagliabue could not rebut Orkin's legitimate, non-discriminatory explanation that it held Tagliabue to his proposed retirement date. Tagliabue opposed the motion.

---

[1] White was Tagliabue's direct supervisor from 2008–2015.

No. 18-40691

The district court granted Orkin's motion for summary judgment, dismissing Tagliabue's ADEA claim.[2] The district court held that Tagliabue failed to establish a prima facie case of age discrimination because he could not establish that he was discharged from his employment. The district court further held that the undisputed evidence showed that Tagliabue intended to retire and cooperated in the retirement process. Because it concluded that Tagliabue did not make a prima facie case of age discrimination, the district court did not fully address whether Tagliabue rebutted Orkin's purported justification for its employment decision. The district court's discussion is limited to its rejection of Tagliabue's reliance on White's "stray remarks" to assert that age was the basis for his termination. Tagliabue timely appealed.

On appeal, Tagliabue asserts that the district court improperly granted summary judgment based on its erroneous finding that he was not subject to an adverse employment action because he retired voluntarily. Instead, Tagliabue maintains that he established a prima facie case of age discrimination because he was forced to retire early, which he claims is equivalent to discharge. Tagliabue relies on evidence that he never put a retirement date in writing, as well as his testimony that he never set a specific date for his retirement and intended to work until his replacement, Janie Klare, was fully trained. Tagliabue also argues that Orkin deviated from its procedure by not allowing Tagliabue to finish training Klare, which he estimated could take three to four years.

Tagliabue insists that Orkin forced him to retire on January 30, 2015, despite his request to work until at least August when his wife was eligible for Medicare. Tagliabue relies, in part, on his own testimony that Orkin

---

[2] Tagliabue also asserted a claim for violation of the Older Workers Benefit Protection Act, which was summarily dismissed by the district court. Tagliabue does not challenge this ruling on appeal.

No. 18-40691

unilaterally set his retirement date. Additionally, Tagliabue cites testimony from the depositions of his former co-workers, Kenneth Moore and Janie Klare, to support his assertions that he never set a retirement date and wanted to work several more years. Moore, a pest-control technician, remembered White saying, "Time to get out with the old and in with the new generation." Notably, Moore estimated that White made this comment over a year before the challenged employment decision. Moore also stated that he was surprised when Tagliabue retired and that it was his understanding that Tagliabue wanted to stay another two or three years.

Klare testified that after her branch manager training meeting in December 2014, White stated that Tagliabue was not going to "put a retirement date in stone, and that he was going to have to make it effective in January." Moreover, according to Klare, Tagliabue was "kind of shocked" when he received White's phone call, and he stated, "Well, it looks look I'm retiring."

Tagliabue argues there remains a fact issue regarding whether he voluntarily retired or was terminated. Additionally, Tagliabue maintains that he produced both circumstantial and direct evidence that Orkin was motivated by age-discriminatory animus, which he claims is sufficient evidence to rebut Orkin's proffered justification as pretext and to overcome summary judgment. Tagliabue argues that a jury could conclude that Orkin's reason is not worthy of credence based on his testimony that he never set a retirement date and Klare's testimony suggesting that White, rather than Tagliabue, selected the January 2015 retirement date. Tagliabue points to age-related remarks purportedly made by White and Orkin's failure to follow its usual retirement procedure of fully training his successor, Klare, as additional circumstantial evidence of Orkin's unlawful discrimination.

4

No. 18-40691

## II.

We review a summary judgment de novo. *Goudeau v. Nat'l Oilwell Varco, L.P.*, 793 F.3d 470, 474 (5th Cir. 2015). Summary judgment is proper when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "An issue of material fact is genuine if a reasonable jury could return a verdict for the nonmovant." *Jackson v. Cal-Western Packaging Corp.*, 602 F.3d 374, 377 (5th Cir. 2010) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). The movant is entitled to summary judgment if "the nonmoving party has failed to make a sufficient showing on an essential element of [his] case with respect to which [he] has the burden of proof." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

We "draw all reasonable inferences in favor of the nonmoving party, and avoid credibility determinations and weighing of the evidence." *Goudeau*, 793 F.3d at 474. Nevertheless, "a party cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions, or 'only a scintilla of evidence.'" *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007) (quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994)). We may "affirm summary judgment on any ground supported by the record, even if it is different from that relied on by the district court." *Moss v. BMC Software, Inc.*, 610 F.3d 917, 928 (5th Cir. 2010).

## III.

Under the ADEA, it is unlawful for an employer "to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). Ultimately, to establish an ADEA claim, the plaintiff must prove "that age was the 'but-for' cause of the challenged employer decision." *Moss*, 610 F.3d at 922 (quoting *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 178 (2009)). Claims of employment

No. 18-40691

discrimination under the ADEA can be proven through direct evidence, circumstantial evidence, or both. *Jackson*, 602 F.3d at 377.

Because Tagliabue relies on circumstantial evidence of discrimination, we apply the three-step, burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).[3] *Goudeau*, 793 F.3d at 474. To survive summary judgment under this framework, the plaintiff must first present evidence of a prima facie case of age discrimination. *Id.* To establish a prima facie case of age discrimination under the ADEA, Tagliabue must show that "(1) he was discharged; (2) he was qualified for the position; (3) he was within the protected class at the time of discharge; and (4) he was either i) replaced by someone outside the protected class, ii) replaced by someone younger,[4] or iii) otherwise discharged because of his age." *Berquist v. Wash. Mut. Bank*, 500 F.3d 344, 349 (5th Cir. 2007). The parties only dispute the first

---

[3] On appeal, Tagliabue cites to a single comment purportedly made by White as direct evidence of discrimination. In her deposition, Klare testified that in December 2014 White said, "Paul is never gonna leave, and I'm going to have to set the [retirement] date or I'm going to have to tell him when to leave," and that White made a reference to January, which was the following month.

White's alleged comment is not direct evidence of discrimination because it is not clearly age related and does not otherwise show discriminatory animus. *See Moss*, 610 F.3d at 929 (explaining that comments are direct evidence of age discrimination only if they satisfy four criteria, one of which requires that the remark be age related); *see also Leibforth v. Belvidere Nat'l Bank*, 337 F.3d 931, 934 (7th Cir. 2003) (finding a similar statement, namely that "it was in the Bank's best interest to set Leibforth's retirement date because she refused to do so," insufficient to show that the Bank's actions were based on prohibited animus, and thus not direct evidence of discrimination). "There is a link between retirement and age, but it is not a necessary one." *Martin v. Bayland Inc.*, 181 F. App'x 422, 424 (5th Cir. 2006) (holding that the plaintiff did not present direct evidence of discriminatory animus because the owner's comment that it was time for him to retire "requires one to infer that he was fired because of his age"). Because this remark is not so "direct and unambiguous" that a jury could "conclude without any inferences or presumptions" that age was an impermissible factor in the decision to terminate the employee, it cannot be considered direct evidence of discrimination. *EEOC v. Tex. Instruments Inc.*, 100 F.3d 1173, 1181 (5th Cir. 1996); *see also Sandstad*, 309 F.3d at 897–98 ("If an inference is required for the evidence to be probative as to [the employer's] discriminatory animus in firing [the employee], the evidence is circumstantial, not direct.").

[4] Tagliabue's replacement, Janie Klare, was 52.

element of Tagliabue's initial prima facie burden—whether Tagliabue was discharged or otherwise suffered an adverse employment action.

An employer's decision to discharge a protected employee on the basis of age is explicitly prohibited under the ADEA. *See* 29 U.S.C. § 623(a)(1). Conversely, an employee's voluntary retirement—outside of a claim of constructive discharge[5]—is generally not an adverse employment action. *Cf. McCoy v. City of Shreveport*, 492 F.3d 551, 557–59 (5th Cir. 2007) (holding that the plaintiff did not suffer a legally actionable adverse employment action necessary for her discrimination claim because the summary judgment evidence showed that she retired voluntarily, not as the result of a constructive discharge); *see also Hinojosa v. CCA Props. of Am., LLC,* 400 F. App'x 920, 922 (5th Cir. 2010); *Woods v. Sheldon Indep. Sch. Dist.*, 232 F. App'x 385, 388 (5th Cir. 2007). The instant dispute falls somewhere in between this obvious delineation: Tagliabue contends that Orkin forced him to retire early, which he asserts is the equivalent of actual discharge.

If the plaintiff establishes a prima facie case, the burden shifts to the defendant to offer a legitimate, nondiscriminatory reason for the adverse

---

[5] Courts commonly apply a constructive discharge analysis to determine whether retirement constitutes an adverse employment action. *See, e.g.*, *McCann v. Litton Sys., Inc.,* 986 F.2d 946, 950–51 (5th Cir. 1993); *Tyler v. Union Oil Co. of Cal.*, 304 F.3d 379, 394 (5th Cir. 2002); *Brown v. Bunge Corp.*, 207 F.3d 776, 782 (5th Cir. 2000) ("When an employee resigns, he may satisfy the discharge requirement by proving constructive discharge."); *see also Allovio v. Holder*, 923 F. Supp. 2d 151, 158 (D.D.C. 2013) (quoting *Aliotta v. Bair*, 614 F.3d 556, 566 (D.C. Cir. 2010)) ("'Resignations or retirements are presumed voluntary' unless an employee can show that a 'reasonable person in the employee's position would have felt compelled to resign under the circumstances.'"); *Honor v. Booz-Allen & Hamilton, Inc.*, 383 F.3d 180, 186 (4th Cir. 2004) (explaining that unless there is a claim for constructive discharge, voluntary resignation does not constitute adverse employment action); *Harris v. Ashcroft*, 74 F. App'x 669, 672 (7th Cir. 2003) ("Encouraging an employee to retire can amount to an adverse employment action, but as with other constructive discharges, there must be evidence that a reasonable employee would not feel free to ignore the suggestion."). However, this case is unique because Tagliabue does not allege constructive discharge, rather he asserts that he was actually discharged.

employment action taken. *Goudeau*, 793 F.3d at 474. The third and final "pretext stage of this analysis" requires that the employee "prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination." *Id.* (internal quotation marks and citation omitted). Tagliabue additionally challenges the adverse summary judgment at the pretext stage, arguing that he produced sufficient evidence that Orkin's justification is false, as well as evidence that the decisionmaker made ageist comments and did not follow usual procedure.

## IV.

We are skeptical that Tagliabue can show that he was discharged or otherwise suffered an adverse employment action—an essential element of his prima facie case. *See Hamilton v. Grocers Supply Co., Inc.*, 986 F.2d 97, 98 (5th Cir. 1993); *see also Anthony v. Donahoe*, 460 F. App'x 399, 404 (5th Cir. 2012).[6] However, because "a prima facie case is fairly easily made out," *Amburgey v. Corhart Refractories Corp.*, 936 F.2d 805, 812 (5th Cir. 1991), we will assume without deciding that Tagliabue cleared the relatively low hurdle of establishing a prima facie case.[7]

Nevertheless, resolving this disputed fact in Tagliabue's favor and assuming *arguendo* Tagliabue established a prima facie case, summary judgment in favor of Orkin was proper at the pretext stage of the burden-shifting analysis. *See Malcolm v. Vicksburg Warren Sch. Dist. Bd. of Trs.*, 709 F. App'x 243, 249 (5th Cir. 2017). Once Tagliabue makes a prima face showing, the burden of production shifts to Orkin to identify a legitimate,

---

[6] *See also Squyres v. Heico Cos., L.L.C.*, 782 F.3d 224, 239 (5th Cir. 2015) (Jones, J., concurring).

[7] Because we resolve this appeal on pretext grounds, we decline to resolve whether Tagliabue suffered an adverse employment action.

nondiscriminatory reason for its decision. *Goudeau*, 793 F.3d at 474. Emphasizing that Tagliabue voluntarily retired, Orkin maintains that it was justified in holding Tagliabue to his proposed retirement date because it had invested resources into Tagliabue's planned retirement and succession plan.[8]

Because Tagliabue does not dispute that Orkin met its burden of production, the burden shifts back to Tagliabue to prove by a preponderance of the evidence that Orkin's proffered explanation is "not its true reason[], but [is] a pretext for discrimination" or otherwise offer evidence that is probative of intentional discrimination. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 143 (2000); *see also Price v. Fed. Express Corp.*, 283 F.3d 715, 720 (5th Cir. 2002) ("On summary judgment, in this third step, the plaintiff must substantiate his claim of pretext through evidence demonstrating that discrimination lay at the heart of the employer's decision."). To show that the employer's rationale is merely a pretext for discrimination, the plaintiff must put forward "substantial evidence" to "rebut[] each of the nondiscriminatory reasons the employer articulates." *Wallace v. Methodist Hosp. Sys.*, 271 F.3d 212, 220 (5th Cir. 2001). "In determining whether [Tagliabue's] rebuttal precludes summary judgment, 'the question is whether [Tagliabue] has shown that there is a genuine issue of material fact as to whether [Orkin's] reason was pretextual.'" *Moss*, 610 F.3d at 922 (quoting *Jackson*, 602 F.3d at 378–79).

"Proof that the defendant's explanation is unworthy of credence . . . may be quite persuasive [circumstantial evidence] . . . [because] [i]n appropriate

---

[8] While recognizing that the employer's burden at this stage is not an entirely *de minimus* one, Tagliabue does not contend that Orkin failed to meet its burden of production with regard to this asserted justification, and we will not address any such claim *sua sponte*. *See Stennett v. Tupelo Pub. Sch. Dist.*, 619 F. App'x 310, 315 n.3 (5th Cir. 2015). Tagliabue, however, argues that Orkin failed to articulate a legitimate, nondiscriminatory reason for *advancing* Tagliabue's retirement date and did not produce admissible evidence that such a reason was justified. We need not reach this alternative argument.

circumstances, the trier of fact can reasonably infer from the falsity of the explanation that the employer is dissembling to cover up a discriminatory purpose." *Reeves*, 530 U.S. at 147. Evidence demonstrating that the employer's explanation is false or unworthy of credence, taken together with the plaintiff's prima facie case, is "likely to support an inference of discrimination even without further evidence of defendant's true motive." *Sandstad v. CB Richard Ellis, Inc.*, 309 F.3d 893, 897 (5th Cir. 2002). "Thus, the plaintiff can survive summary judgment by producing evidence that creates a jury issue as to the employer's discriminatory animus or the falsity of the employer's legitimate nondiscriminatory explanation." *Id.*

The burden of persuasion remains on Tagliabue to show that Orkin intentionally discriminated against him, *Reeves*, 530 U.S. at 143, which at the pretext stage of the *McDonnell Douglas* analysis under the ADEA requires a showing "that age was [a] 'but-for' cause of the employer's adverse decision." *Squyres v. Heico Cos., L.L.C.*, 782 F.3d 224, 231 (5th Cir. 2015) (quoting *Burrage v. United States*, 571 U.S. 204, 213 (2014)).

If not at the prima facie stage, Tagliabue's ADEA claim fails at the pretext stage of the analysis. Tagliabue has not produced sufficient evidence to establish a genuine fact issue as to whether Orkin's proffered reason was pretext for discrimination or otherwise that age was the reason for his separation from Orkin. Assuming Orkin carried its burden of production, Tagliabue argues that a jury could conclude that Orkin's reason is not worthy of credence based on his testimony that he never set a retirement date and Klare's testimony suggesting that White rather than Tagliabue selected the January 2015 retirement date. Tagliabue points to White's purported age-related remarks and Orkin's failure to follow its usual retirement procedure of fully training his successor, Klare, as additional circumstantial evidence of Orkin's unlawful discrimination.

The record evidence does not support a finding of pretext on any of the grounds asserted by Tagliabue. "The issue at the pretext stage is whether the employer's reason, even if incorrect, was the real reason for the plaintiff's termination." *Goudeau*, 793 F.3d at 476 (quoting *Sandstad*, 309 F.3d at 899). The evidence in the record supports Orkin's proffered justification that Tagliabue's termination was a result of his voluntary retirement. Although Tagliabue never put a retirement date in writing, the overwhelming, uncontradicted evidence shows that Tagliabue expressed to White an intent to retire and actively participated in the furtherance of his upcoming retirement.

According to Tagliabue, in September 2009, during a discussion about revenue growth and in response to White's concerns about complacency, Tagliabue told White that he would give 110% until he retired, which "at the earliest" would be in "four years and three months" (December 2013), when his benefits vested. Tagliabue also concedes that in 2014 he discussed with White that he was planning to retire. Tagliabue himself recommended to White that Janie Klare, Orkin's administrative manager, succeed him as the Victoria branch manager.

Tagliabue initially approached Klare in early 2013 about her becoming the Victoria branch manager when he retired, informing her that his plan was to retire in 2014: Tagliabue initially mentioned retiring either March 2014 or April 2014, a date that was moved back to June 2014 and then again to September 2014. While recognizing that the parties dispute whether Tagliabue or White was responsible for delaying the date, it is undisputed that Tagliabue's retirement was postponed at least three times and his last day was over a year after the timeframe in which he asserted he would be amenable to retiring.

Per Tagliabue's recommendation, Orkin selected Klare to succeed Tagliabue as branch manager. White scheduled Klare's Helms evaluation in

July 2013, a prerequisite to her management training.[9] Over the next few months, White, Tagliabue, and Klare continued to meet and discuss Tagliabue's retirement and Klare's new role. In January 2014, Klare was officially placed in the branch manager trainee program. Of particular importance, during a staff meeting on January 28, 2014, Tagliabue announced his retirement to his branch employees and informed them that Klare was in training and would succeed him when he retired.[10] This undisputed evidence not only corroborates Tagliabue's upcoming retirement, but also demonstrates that Tagliabue's retirement was a collaborative process between Tagliabue and Orkin.

Klare testified that by the end of 2014 Tagliabue's retirement date was set for January 2015. Around this same time, Tagliabue requested that Orkin approve additional, unaccrued vacation and sick time. Tagliabue's last day at work was January 30, 2015—thirteen months after Klare was promoted to branch manager trainee. That day, White called Tagliabue around lunchtime to notify him that he received authorization on Tagliabue's requested vacation pay and that "he could leave." This statement cannot be reasonably construed as evidence that Tagliabue was forced to retire. To the contrary, Tagliabue admits that no one at Orkin ever told him he was fired or terminated. Moreover, after receiving White's phone call, Tagliabue left the office without further inquiry or objection. *See Hinojosa*, 400 F. App'x at 923–24 ("[B]efore agreeing to retire . . . a reasonable employee would have questioned his superiors about their intentions.").

---

[9] Orkin administers a "Helms Evaluation" to determine whether the prospective trainee is qualified for management training.

[10] Although Tagliabue did not announce a specific date at this meeting, his retirement announcement was over a year prior to the date he officially retired from Orkin.

No. 18-40691

Additionally, despite his intimate knowledge of the reporting process, Tagliabue never complained to White, human resources, or any Orkin administrative personnel about being forced to retire.[11] Although it was contrary to company policy, Orkin obliged Tagliabue's request to receive payment for accrued and unaccrued vacation days and sick time. Tagliabue called Larry Black in Orkin's Human Resource Department to thank him for approving his request for additional vacation pay without any mention of his dissatisfaction with his retirement. Tagliabue officially retired from Orkin on March 31, 2015. Tagliabue and White had lunch the following day.

Even when read in the light most favorable to Tagliabue, the record evidence shows that Tagliabue communicated his intention to retire and participated in the preparation of his imminent retirement. Tagliabue's only contravention of that evidence comes from his own bare assertions that he never set a retirement date and was forced to retire because of his age. *Cf. Caldwell v. KHOU-TV*, 850 F.3d 237, 244 (5th Cir. 2017) (recognizing that the plaintiff presented evidence other than his own assertions in support of his arguments, which together raised a genuine issue of material fact as to whether the reasons the defendants gave for terminating him were pretextual). "Though [Tagliabue] now asserts that [he] never had any intention of retiring, the relevant question for purposes of our pretext analysis is whether [Orkin] honestly believed that [he] did, and [Tagliabue] presented no evidence showing that was not the case." *Leibforth v. Belvidere Nat'l Bank*, 337 F.3d 931, 933–34 (7th Cir. 2003).

---

[11] Tagliabue received information regarding Orkin's discrimination and harassment policies. Additionally, as branch manager, Tagliabue was responsible for disseminating Orkin's policies to new and existing employees and reporting complaints of discrimination or harassment. During his 22 years as branch manager, Tagliabue never received any discrimination or harassment complaints from his employees.

No. 18-40691

Tagliabue's reliance on Klare's testimony likewise falls short of creating a genuine fact issue as to whether Orkin's proffered reason is not its true reason, but is a pretext for discrimination. *See Squyres*, 782 F.3d at 231. Tagliabue heavily relies on Klare's testimony that, after her December 2014 branch manager training meeting, White stated that Tagliabue was not going to "put a retirement date in stone, and that he was going to have to make it effective in January." He argues that this comment is direct evidence that Orkin's proffered justification is false. We disagree. Klare's testimony must be considered in context and in conjunction with the record "taken as a whole," which includes the aforementioned, uncontroverted evidence of Tagliabue's announced voluntary retirement. *See Reeves*, 530 U.S. at 150. Further, as discussed *supra*, this comment does not demonstrate discriminatory intent, nor is it probative of Orkin's true motivation for terminating Tagliabue.

Tagliabue does not offer evidence that Orkin forced him to retire or terminated him. Instead, his actions before and after his last day dictate a contrary finding. *See Jackson*, 602 F.3d at 379 n.22 (citing *Vais Arms, Inc. v. Vais*, 383 F.3d 287, 294 (5th Cir. 2004) (concluding that self-serving statements were insufficient to overcome summary judgment, particularly when faced with "overwhelming evidence" in opposition)). This is insufficient to rebut Orkin's proffered reason that Tagliabue's termination was a result of his voluntary retirement. *See Molnar v. Ebasco Constructors, Inc.*, 986 F.2d 115, 119 (5th Cir. 1993) ("[T]estimony by an employee regarding his subjective belief that his termination resulted from age discrimination is insufficient to make an issue for the jury in the face of proof showing an adequate, nondiscriminatory reason for his release.").

Additionally, Tagliabue seeks to undermine the genuineness of Orkin's purported justification by arguing that Klare's training could not have been an expended resource justifying Orkin's decision because Tagliabue's departure

before completing Klare's training left the branch in a "chaotic, hell-like situation." This argument is equally unavailing. Importantly, Tagliabue does not rebut—or even address—the resources Orkin identifies as having expended in preparation for Tagliabue's retirement, including the succession meetings between White, Klare, and Tagliabue; sending Klare to Austin, Texas to complete the Helms evaluation; Klare's salary increase; and granting Tagliabue's request for final vacation and sick time. In sum, Tagliabue has failed to produce evidence from which a reasonable factfinder could conclude that Orkin's proffered reason is false. *See Price*, 283 F.3d at 722.

Tagliabue's remaining allegations of pretext or attempts to show Orkin's discriminatory animus are equally insufficient to defeat summary judgment. Tagliabue asserts that terminating him prior to the completion of training his replacement contravened Orkin's policy.[12] Tagliabue expected to stay with the company until Klare was fully trained, which he speculated would take three to four years. However, Tagliabue does not refer to any record evidence that such an open-ended training policy existed.[13] Furthermore, Tagliabue's last day at work was January 30, 2015—some *thirteen* months after Klare was promoted to branch manager trainee. Moreover, mere deviations from standard procedure do not show pretext or improper discrimination unless the plaintiff can connect the departure from procedure to a discriminatory motive. *See McMichael v. Transocean Offshore Deepwater Drilling, Inc.*, 934 F.3d 447, 459–60 (5th Cir. 2019).

Finally, absent other evidence probative of pretext, Tagliabue's reliance on comments allegedly made by White years prior to the challenged

---

[12] Klare completed her branch manager training in November 2015.

[13] Tagliabue does not cite to any written policy, or any evidence whatsoever, as to the expected length of Orkin's training program, or why it would take three to four years to complete.

employment decision is insufficient, standing alone, to defeat summary judgment. *Jackson*, 602 F.3d at 380; *cf. Ng-A-Mann v. Sears, Roebuck & Co.*, 627 F. App'x 339, 342 (5th Cir. 2015) (reasoning that while remarks offered as circumstantial evidence do not directly evidence discriminatory intent, they can "*compound other evidence* that a proffered nondiscriminatory reason for terminating an employee was pretextual") (emphasis added).

According to Tagliabue, White made several "ageist remarks" to Tagliabue that he contemporaneously memorialized in writing. Tagliabue alleges that in September 2009, White, Tagliabue's direct supervisor, made a comment about Tagliabue becoming "complacent because [he] was getting older and closer to retirement." Additionally, Tagliabue asserts that White made statements suggesting that Tagliabue was friends with Paul Revere (May 2011); and asking if Tagliabue is "still awake" or if he is "still with us" stating that he "thought older people already went home" (May 2010 and February 2013).

Although not direct evidence of discrimination, White's remarks are relevant evidence to be considered as part of a broader circumstantial case of age discrimination. *Goudeau,* 793 F.3d at 476; *see also Machinchick v. PB Power, Inc.*, 398 F.3d 345, 353 (5th Cir. 2005) ("We have found that purely indirect references about an employee's age, such as comments that an employee needed to look 'sharp' if he were going to seek a new job, and that he was unwilling and unable to 'adapt' to change, can support an inference of age discrimination."). However, we have repeatedly held that stray remarks[14]

---

[14] Comments rise above the level of stray remarks and are "sufficient evidence of age discrimination" if they are: "1) age related, 2) proximate in time to the employment decision, 3) made by an individual with authority over the employment decision at issue, and 4) related to the employment decision at issue." *Moss*, 610 F.3d at 929. "Comments that do not meet these criteria . . ., standing alone, are insufficient to defeat summary judgment." *Jackson*, 602 F.3d at 380.

cannot be the sole proof of age discrimination. *See, e.g.*, *Moss*, 610 F.3d at 929; *Goudeau,* 793 F.3d at 477; *Kelly v. Costco Wholesale Corp.*, 632 F. App'x 779, 783 (5th Cir. 2015).[15] Aside from these comments, Tagliabue provides no other evidence to support his claim that he was discharged because of his age. Because White's alleged comments are not proximate in time to Tagliabue's retirement (he made them years prior) and are not related to the disputed employment action, they are—without additional evidence of age discrimination—insufficient to defeat summary judgment.[16] *See Jackson*, 602 F.3d at 380.

Nor are White's comments in combination with Tagliabue's conclusory assertions that he never set a retirement date and did not intend to retire for several more years sufficient to establish a genuine dispute of material fact as to pretext. *See Jackson*, 602 F.3d at 380; *see also Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1429 (5th Cir. 1996) (en banc) ("[C]onclusory allegations, speculation, and unsubstantiated assertions are inadequate to satisfy the nonmovant's burden."). Therefore, we cannot conclude that there is a triable issue of fact as to whether Orkin discriminated against Tagliabue based on age. *Jackson*, 602 F.3d at 381; *see also Goudeau*, 793 F.3d at 478 ("[T]he pretext inquiry asks whether there is sufficient evidence demonstrating

---

[15] *See also Palasota v. Haggar Clothing Co.*, 342 F.3d 569, 577 (5th Cir. 2003) ("After *Reeves*, . . . so long as remarks are not the only evidence of pretext, they are probative of discriminatory intent."); *Reed v. Neopost USA, Inc.*, 701 F.3d 434, 441 (5th Cir. 2012) ("Where a plaintiff offers remarks as circumstantial evidence alongside other alleged discriminatory conduct, . . . we apply a more flexible two-part test.") (citation omitted); *Cervantez v. KMGP Servs. Co. Inc.*, 349 F. App'x 4, 10–11 (5th Cir. 2009) ("[A] comment is not evidence of discrimination if it is the sole proof of pretext."); *Bugos v. Ricoh Corp.*, No. 07-20757, 2008 WL 3876548, at *6 (5th Cir. Aug. 21, 2008) ("Because Brown's workplace comments are the only circumstantial evidence of pretext, and, standing alone, they are not probative, we affirm the district court's grant of summary judgment.").

[16] Additionally, White's inclusion in the protected class (age 54 at the time of the challenged employment decision) weighs against a finding of discriminatory animus. *McMichael*, 934 F.3d at 460 (citing *Kelly*, 632 F. App'x at 783).

the falsity of the employer's explanation, taken together with the prima facie case, to allow the jury to find that discrimination was [a] but-for cause of the termination.").

Accordingly, because Tagliabue failed to present sufficient evidence from which a reasonable factfinder could conclude that Orkin's proffered reason is pretext for age discrimination, we AFFIRM the district court's summary judgment in favor of Orkin.